933 A.2d 589

PASCACK VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, PLAINTIFF–RESPONDENT v. PASCACK VALLEY REGIONAL SUPPORT STAFF ASSOCIATION, DEFENDANT–APPELLANT.

Argued October 30, 2006—Decided October 29, 2007.

*Alfred F. Maurice,* argued the cause for appellant (*Springstead & Maurice,* attorneys).

*Rodney T. Hara,* argued the cause for respondent (*Fogarty & Hara,* attorneys; *Mr. Hara* and *Stephen R. Fogarty,* of counsel; *Mr. Hara, Jocelyn M. Frank* and *Janet L. Parmelee,* on the briefs).

*Steven R. Cohen,* argued the cause for *amicus curiae* New Jersey Education Association (*Selikoff & Cohen,* attorneys; *Mr. Cohen* and *Carol H. Alling,* on the brief).

*John V. Burns,* argued the cause for *amicus curiae* New Jersey School Boards Association (*Cynthia J. Jahn,* General Counsel, attorney).

Justice HOENS delivered the opinion of the Court.

In February 2004, Thomas Dombrowski, a high school custodian, was terminated from his position pursuant to the terms of his individual employment contract. Because he considered the termination to be discipline imposed on him for his use of racially offensive language directed to his co-workers and to high school students, he filed a grievance through the authorized bargaining representative. After the arbitrator concluded that termination was too harsh a penalty, the school board pursued an action in the Chancery Division. Both the Chancery Division judge and the

Appellate Division concluded that the arbitrator exceeded his authority and upheld the termination.

This dispute requires us to consider circumstances we have left unanswered in our recent decisions relating to nontenured school employees whose employment rights are governed in part by individual contracts and in part by collectively negotiated agreements. In particular, we address whether, although the individual employment contracts may be terminated on notice and although such employees have no right to the renewal of their individual contracts, they nonetheless have a right to pursue grievance arbitration if their contracts are terminated in the middle of a contract term based on facts that would ordinarily call for imposition of discipline.

We hold that, in the particular circumstances of this matter, where the parties have agreed that the nontenured school employees may only be disciplined for just cause and have defined any dismissal as a disciplinary action subject to the grievance procedures at the employees' option, a mid-term contract termination imposed as punishment for behavior that would otherwise call for imposition of discipline falls within the collective agreement's definition of dismissal subject to the grievance procedures.

## I.

The facts relevant to the issues before us are not disputed. Plaintiff Pascack Valley Regional High School Board of Education ("the Board") is a public school board of education and, therefore, a public employer within the meaning of the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –39 (the Act). Defendant Pascack Valley Regional Support Staff Association ("the Association") is a public employee representative under the Act and is the exclusive employment bargaining representative for certain school personnel, including school custodians.

## A.

The parties entered into a Collective Negotiations Agreement (CNA) for the period from July 1, 2002 through June 30, 2005, the

terms of which are in issue in this litigation. Article III of the CNA sets forth generally-applicable grievance procedures. That Article of the CNA includes the following provisions that are relevant to this dispute:

B. *Definitions*

1. *Grievance:* Grievance is a claim by an employee or the Association based upon the application, or violation of this Agreement, involving a term or condition of employment of an employee or a group of employees.

. . . .

C. *Purpose*

The purpose of this procedure is to resolve disputes that arise involving the terms and conditions of employment covered by this Agreement. Both parties agree that these proceedings will be kept as informal and confidential as may be appropriate at any level of the procedure.

. . . .

D. *Procedure*

7. *Level Five—Binding Arbitration:*

(c)(ii) The only grievances which may be submitted to binding arbitration are those alleging there has been a violation of the locally negotiated agreement.

(c)(v) Custodians and Assistants—The arbitrator shall not have the authority to rule on grievances which concern the interpretation, application or alleged violation of statutes and administrative codes setting terms and conditions of employment.

Article IV, which sets forth the rights of employees covered by the CNA, also includes provisions relevant to our inquiry as follows:

D. No custodian ... shall be disciplined, reprimanded, reduced in rank or compensation or deprived of professional advantage without just cause. Any such action asserted by the Board, or any agent or representative thereof, ... shall be subject to the Grievance Procedure herein set forth. Any dismissal or suspension shall be considered a disciplinary action and shall at the option of the custodian ... be subject to the Grievance Procedure.

In addition, the Board entered into individual contracts of employment with a variety of employees, including custodians, who are not entitled to tenure rights. All of those individual contracts have terms of one year, and, as permitted by statute, *see N.J.S.A.* 18A:27-4.1b, the custodial employees have no right to renewal of the contracts. In accordance with the statute, employees whose contracts are not renewed are entitled to a written statement of the reasons for the decision not to renew. *See ibid.*

These employees are then considered "nonrenewed" rather than terminated or dismissed. *See ibid.*

Each of the individual employment contracts signed by the custodians included a specific termination clause, which provided as follows:

It is hereby agreed by the parties hereto that this contract may at any time be terminated by either party giving to the other 15 days' notice in writing of intention to terminate the same, but that in the absence of any provision herein for a definite number of days' notice, the contract shall run for the full term named above.

These statutory and contractual terms govern the dispute now before us.

### B.

In January 2004, a custodian at the Pascack Hills High School alleged, in a written complaint, that Thomas Dombrowski, who was also a custodian at the high school, had repeatedly made inappropriate and racially offensive remarks to him on the job. The school district's affirmative action officer, Dr. Edie Weinthal, conducted an investigation. Her investigation revealed not only that Dombrowski had made those comments to his fellow custodians, but that he had also made similar inappropriate remarks to students who were working with the custodial staff during the summer.

Dr. Weinthal then convened a meeting with Dombrowski, which was also attended by two union representatives, the superintendent of schools, and the high school principal. When Weinthal informed Dombrowski of the allegations, Dombrowski declined to discuss any of them. As a result, Dombrowski was suspended from his job with pay. The superintendent then recommended to plaintiff that Dombrowski be terminated.

In February 2004, plaintiff convened a hearing to consider whether Dombrowski should be terminated. At the hearing, plaintiff heard testimony from Weinthal, the superintendent, the custodian who had first raised the complaint, and the night building coordinator. In addition, plaintiff received and consid-

ered written statements offered by several other custodians and an investigative report prepared by Weinthal. Although he was given the opportunity to do so, Dombrowski neither testified nor offered any evidence on his behalf. On February 10, 2004, plaintiff passed a resolution providing Dombrowski with fifteen days' notice of the termination of his individual employment contract in accordance with the terms of that contract.

Defendant promptly filed a grievance on Dombrowski's behalf pursuant to the CNA. That grievance asserted that his dismissal was not governed by the individual employment contract, but instead fell within the terms of the CNA, and that he had been terminated without just cause as required by the CNA. When the grievance was denied, defendant requested that the Public Employment Relations Committee (PERC) appoint an arbitrator. PERC did so, and in June 2004, the matter proceeded to an arbitration hearing.

In his August 16, 2004 decision, the PERC arbitrator found that Dombrowski had in fact engaged in the behavior which formed the basis for the disciplinary action, but also faulted plaintiff for inadequacies in its publication of its affirmative action policies and in its training about those policies. The arbitrator then concluded that plaintiff had improperly utilized the individual contract termination clause in order to avoid the CNA's disciplinary protections. Therefore, because Dombrowski was entitled to the protections of the CNA, plaintiff could only terminate him on a showing that there was just cause to do so.

In reviewing the record and his factual findings, the PERC arbitrator concluded that, based on the unrefuted record of Dombrowski's repeated and knowing use of racial epithets to other school staff and to students, there was just cause for discipline. Nevertheless, he found that, in light of the circumstances relating to plaintiff's failure to sufficiently publicize its policies and train its staff about the implications of its anti-discrimination policy, termination was too severe a penalty. Instead, the arbitrator concluded that the termination should be modified to a sixty-day suspension

without pay. In doing so, however, the arbitrator specifically noted that his decision about discipline would have "no bearing on a decision to refuse to offer an employment contract to [Dombrowski]" for the following year.

C.

Plaintiff moved in the Chancery Division to vacate the arbitrator's award. The Chancery Division judge granted that motion, concluding that the arbitrator had exceeded his authority because he had failed to enforce the terms of Dombrowski's individual employment contract. Notwithstanding the court's finding that, as a practical matter, termination of the employment contract, as permitted by its terms on fifteen days' notice, was no different from "dismissal," the court concluded that plaintiff had the right to terminate Dombrowski without regard to the grievance provisions of the CNA. Moreover, the Chancery Division judge concluded that plaintiff's decision to afford defendant a hearing did not require the conclusion that the matter was grievable or arbitrable.

Defendant appealed that decision to the Appellate Division, which affirmed. The panel first reasoned that the CNA and the individual contracts do not conflict with each other because the latter affords a notice period not required by the former. The panel further concluded that plaintiff was entitled to exercise its termination right under the contract, that the decision to terminate was not grievable, and that the arbitrator therefore exceeded the scope of his authority by inquiring into the reason for the termination of the contract. We granted defendant's petition for certification, 186 *N.J.* 257, 893 *A.2d* 723 (2006), and we now reverse.

II.

We recently set forth some of the general principles governing labor arbitration in the context of our public schools. *See Bd. of Educ. of Borough of Alpha v. Alpha Educ. Ass'n,* 190 *N.J.* 34, 41–

43, 918 *A.*2d 579 (2006). We there acknowledged that "[a]rbitration is a favored means of resolving labor disputes."[1]  *Id.* at 41–42, 918 *A.*2d 579 (citing *State v. Int'l Fed'n of Prof'l & Technical Eng'rs, Local 195,* 169 *N.J.* 505, 513, 780 *A.*2d 525 (2001); *Scotch Plains–Fanwood Bd. of Educ. v. Scotch Plains–Fanwood Educ. Ass'n,* 139 *N.J.* 141, 149, 651 *A.*2d 1018 (1995)).

Moreover, we recognized that because "[t]he aim of arbitration is to provide the final disposition of a dispute in a speedy and inexpensive manner[,] . . . . judicial review of an arbitrator's decision is very limited, and the arbitrator's decision is not to be cast aside lightly." *Id.* at 42, 918 *A.*2d 579 (citing *Barcon Assocs., Inc. v. Tri–County Asphalt Corp.,* 86 *N.J.* 179, 187, 430 *A.*2d 214 (1981)). While commenting that judicial review of arbitration decisions is limited, we noted that "[i]n the public sector, the scope of review in matters of interpretation is confined to determining whether the interpretation of the contractual language is reasonably debatable." *Ibid.* (quoting *County Coll. of Morris Staff Ass'n v. County Coll. of Morris,* 100 *N.J.* 383, 390–91, 495 *A.*2d 865 (1985)).

At the same time, we reiterated that, for purposes of determining whether a particular dispute is arbitrable, there remains a distinction between questions of substantive arbitrability, to be resolved by a court, and questions of procedural arbitrability, which generally fall within the scope of the arbitrator's authority. *Id.* at 42–43, 918 *A.*2d 579. Therefore, if the question to be decided is "whether the particular grievance is within the scope of the arbitration clause specifying what the parties have agreed to arbitrate," then it is a matter of substantive arbitrability for a court to decide. *Id.* at 43, 918 *A.*2d 579 (quoting *Standard Motor*

---

[1] In so noting, we commented that the Legislature's statutory response to this Court's earlier suggestion to the contrary in the public school setting, *see Camden Bd. of Educ. v. Alexander,* 181 *N.J.* 187, 203, 854 *A.*2d 342 (2004), resolved any doubt about the Legislature's general preference for arbitration of labor disputes. *See Bd. of Educ. of Borough of Alpha, supra,* 190 *N.J.* at 48, 918 *A.*2d 579 (citing *N.J.S.A.* 34:13A–5.3).

*Freight, Inc. v. Local Union No. 560, Int'l Brotherhood of Teamsters,* 49 *N.J.* 83, 96, 228 *A.*2d 329 (1967)). On the other hand, if the question is simply one relating to "whether a party has met the procedural conditions for arbitration," *ibid.* (quoting *Standard Motor Freight, supra,* 49 *N.J.* at 97, 228 *A.*2d 329), it is a matter of procedural arbitrability which has traditionally been "left to the arbitrator." *Ibid.* (citing *John Wiley & Sons, Inc. v. Livingston,* 376 *U.S.* 543, 557, 84 *S.Ct.* 909, 918, 11 *L.Ed.*2d 898, 909 (1964)). In *Alpha,* the parties agreed that the particular dispute fell within the scope of the arbitration clause; here, however, they do not.

We have also previously considered, in part, questions relating to the interrelationship between the rights conferred by and protected under CNAs and the rights addressed in individual employment contracts. The practice of offering separate, annual employment contracts to nontenured school employees is longstanding. *See Troy v. Rutgers,* 168 *N.J.* 354, 372–76, 774 *A.*2d 476 (2001) (discussing mutual operability of individual employment contracts and collective negotiations agreements); *see Mozier v. Bd. of Educ. of Cherry Hill,* 450 *F.Supp.* 742, 747–48 (D.N.J.1977). Indeed, the statute itself acknowledges this practice, and its reference to "nonrenewal" of these contracts makes them permissible and, as a general rule, not grievable as a disciplinary action under CNAs. *See N.J.S.A.* 18A:27–4.1b.

In addressing the relationship between CNA-protected grievance rights and individual employment contracts, we have rejected the assertion that a decision not to renew an individual contract, based on grounds that would also support imposition of discipline, was grievable. *See Camden Bd. of Educ. v. Alexander,* 181 *N.J.* 187, 199, 854 *A.*2d 342 (2004). We there considered the specific language of the CNA, the language of the particular individual contracts, and the policies that support both collectively-negotiated rights and individual contract rights. *See id.* at 196–201, 854 *A.*2d 342. In that context, we declined to consider the employees' argument that the decision not to renew the contracts was a pretext for discipline because to do so would be to effectively

elevate the rights of an employee whose contract was not renewed because of a disciplinary problem above the rights of an employee who, although blameless, was simply not renewed. *See id.* at 201, 854 *A.*2d 342 (citing *Cresskill Bd. of Educ. v. Cresskill Educ. Ass'n,* 362 *N.J.Super.* 7, 15, 826 *A.*2d 778 (App.Div.2003), *certif. denied,* 181 *N.J.* 546, 859 *A.*2d 691 (2004)).

## III.

The record before us here does not present either the factual circumstances or the analytical framework that we considered in Camden. Here, plaintiff received information that Dombrowski was engaging in behavior that was in violation of the expressed anti-discrimination policies of the school district. Plaintiff undertook an investigation directed at deciding whether or not Dombrowski had done so, and conducted a hearing into the allegations. Thereafter, having determined that there was just cause for his termination, plaintiff elected to use the individual contract's termination-on-notice clause rather than the more general discipline mechanism provided for in the CNA. The question, then, is whether there is sufficient evidence in the record to support the conclusion that the parties intended to include a mid-term contract termination based on a disciplinary reason within the CNA's grievance and arbitration protections.

The CNA itself refers in general to the individual contracts, an apparent recognition of the role that those separate agreements play in the employer-employee relationship. However, the CNA also included two provisions that are of particular relevance to custodial staff. The first limited an arbitrator's authority to address certain grievances brought by custodians by excluding some complaints entirely. Although not uniquely relevant to custodians,[2] that provision might suggest that the right of any custodian to pursue a grievance was more limited than the rights

---

[2] The CNA includes similar, although not identical, language with reference to secretarial staff in Article II.D.7(c)(iv).

accorded to other classes of employees. The second provision, however, was expansive in its scope. It specified that "any dismissal" of a custodian would be considered to be a disciplinary action subject to a just cause analysis, and it gave the custodian the option to pursue a grievance and arbitration of "any dismissal."

These CNA provisions demonstrate that the parties agreed that, notwithstanding the terms of the individual contracts and the employer's unfettered right to terminate Dombrowski on fifteen days' notice, where plaintiff did so only as a surrogate for a disciplinary proceeding, the act of termination became an act of discipline that the parties had specifically negotiated and agreed would be grievable at the custodian's option. In so concluding, we see harmony between the terms of the individual contract rights and the CNA's grievance provisions, in particular as they relate to custodians.

Under these circumstances, the use of the individual contract's termination clause was not a termination for a reason other than one that falls, by agreement, within the terms of the CNA. Rather, it was an effort to use the individual contract to bypass the protections that the Board agreed in the CNA would apply to discipline of all employees. As such, it was the disciplinary measure of dismissal that the CNA specifically gave the custodian the right to grieve through the arbitration mechanism.

Even so, we do not intend to imply that plaintiff could not have waited until the end of the annual term and opted not to renew Dombrowski's contract. Rather, in light of the annual nature of the contract, in light of statutory permission for nonrenewal, in light of our precedents concluding that nonrenewal even for a disciplinary reason is excluded from the scope of arbitration, we echo our observation that we will not afford greater protections to offending employees like Dombrowski at the end of the term than we accord to entirely blameless employees whose contracts are not renewed. *See Camden, supra,* 181 *N.J.* at 201, 854 *A.*2d 342. Nor do we suggest that a contract termination on fifteen days' notice

for reasons unrelated to discipline would not be both permissible and outside of the scope of the grievance clause. Under those circumstances, however, were the custodian dissatisfied with his termination, the issue, if any, would be one of contract interpretation for a court to decide, rather than one for the arbitrator to address.

## IV.

Applying these principles to the record before us, we first note that the CNA and the individual employment contract are not inconsistent. The long-term usage of individual contracts and the clear scope of the language of the CNA are significant in determining the meaning and intent of the parties. As such, plaintiff certainly had the right to decline to renew Dombrowski's contract and, in general, had the right to terminate it on fifteen days' notice. By the same token, however, we cannot avoid observing that prior to its decision to terminate that contract, all of the Board's actions were focused on establishing facts that would, in any other context, serve as just cause for discipline.

In these circumstances, we can only conclude that plaintiff, having agreed as a part of the CNA that matters of discipline would be subject to the grievance and arbitration clauses of that contract, and having agreed that "any dismissal" of a custodian would be within the grievance clause, also agreed that grounds for dismissal would not also support termination on notice of an individual contract in the middle of its term. We therefore conclude that the imposition of termination was a disciplinary decision that was substantively arbitrable. Viewed in that light, both the Chancery Division judge and the Appellate Division erred.

## V.

The judgment of the Appellate Division is reversed and the award of the arbitrator is reinstated.

*For reversal and reinstatement*—Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.