972 A.2d 387

MOUNT HOLLY TOWNSHIP BOARD OF EDUCATION, PLAINTIFF–RESPONDENT, v. MOUNT HOLLY TOWNSHIP EDUCATION ASSOCIATION AND JUAN GONZALEZ, DEFENDANTS–APPELLANTS.

Argued January 5, 2009—Decided June 24, 2009.

320

*Steven R. Cohen* argued the cause for appellants (*Selikoff & Cohen,* attorneys; *Mr. Cohen* and *Carol H. Alling,* on the brief).

*James F. Schwerin* argued the cause for respondent (*Parker McCay,* attorneys).

Chief Justice RABNER delivered the opinion of the Court.

Plaintiff Mt. Holly Township Board of Education (Board) terminated Juan Gonzalez, a custodian, after conducting a disciplinary hearing. At the time, Gonzalez was in the middle of a one-year individual employment contract. The Board terminated him under that contract, and not the existing collectively negotiated agreement (CNA) between the Board and defendant Mt. Holly Township Education Association (Association).

Under the individual contract, Gonzalez was entitled to and received fourteen days' notice of termination. Under the CNA, employees could not be discharged without just cause. Any such action was subject to the grievance procedure outlined in the CNA, which allowed for arbitration.

The Association filed a grievance on Gonzalez's behalf and requested arbitration. The trial court permanently restrained arbitration, and its judgment was affirmed on appeal.

Today we reaffirm principles established in *Lullo v. International Ass'n of Fire Fighters,* 55 *N.J.* 409, 428, 262 *A.*2d 681 (1970), and *Troy v. Rutgers,* 168 *N.J.* 354, 375–76, 774 *A.*2d 476 (2001), which concluded that when provisions in an individual employment contract conflict with the terms in a CNA, and diminish or interfere with rights provided by the CNA, the language in the individual contract must yield to the collective agreement.

Because we find that Gonzalez's individual employment contract conflicted with the CNA and diminished its specific terms by depriving him of the right to arbitration, we reverse and remand. That approach is consistent with the Legislature's recent command that in interpreting the meaning of a grievance arbitration clause, "doubts should be resolved in favor of requiring arbitration." *N.J.S.A.* 34:13A–5.3. Accordingly, on remand, Gonzalez is entitled to a hearing before an arbitrator to address the grievance filed.

## I.

The relevant facts are not in dispute. Plaintiff Mt. Holly Township Board of Education is a public school board of education and, thus, a public employer within the meaning of the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –39. Defendant Mt. Holly Township Education Association is a public employee representative under the Act, and is the sole representative for collective negotiations about terms and conditions of employment for custodians and certain other school employees.

The Board and the Association entered into a CNA for the period from July 1, 2004 through June 30, 2007. Its provisions applied to all employees in the negotiation unit, including custodians and maintenance workers.

The CNA contains a "just cause" provision at Article IX(B), which states that

*[n]o employee shall be discharged,* disciplined, reprimanded, reduced in rank or compensation, or deprived of any professional advantage or given an adverse evaluation of his/her professional services *without just cause. Any such action* asserted by the Board or any agent or representative thereof, *shall be subject to the grievance procedure herein set forth.*

[ (emphasis added).]

"Grievance" is defined at Article XV(A)(1) as

an allegation that there has been a breach, misinterpretation or improper application of the terms of this Agreement, or a claimed violation, misinterpretation, or

misapplication of rules or regulations, existing policies, or administrative decisions that affect the terms and conditions of employment.

Article XV(A)(3) specifically excludes non-renewal of a contract for a non-tenured employee from the definition of grievance. There is no comparable exclusion for the termination or discharge of an employee mid-contract.

Under the CNA, an aggrieved employee is to follow a five-step grievance process outlined in Article XV(C). The process progresses from an initial discussion with an immediate supervisor to binding arbitration.

In addition, Article IX(E)(3) affords all employees who are not renewed or terminated, as well as those who are disciplined, the right to request a statement of reasons and a hearing before the Board. The CNA deals separately with layoffs tied to a reduction in force in Article XII, which we do not address in this opinion.

The Board hired Juan Gonzalez as a non-tenured custodian/maintenance worker. Before starting in that position, Gonzalez signed a standard, individual contract for employment, prepared by the Board, covering the period from July 1, 2005 through June 30, 2006. The contract expressly stated that it "may at any time be terminated by either party" on fourteen days' written notice.

Months after he began working, Gonzalez was accused of striking another custodian. The Board held a disciplinary hearing on January 20, 2006, and terminated Gonzalez in a letter that same day. The letter stated: "As per the discipline hearing held this afternoon, your position as custodian/maintenance for the Mt. Holly Township Public Schools is terminated effective February 3, 2006 in accordance with your employment contract."

The Association filed a timely grievance with the Board, challenging the decision to terminate Gonzalez and claiming it was done without just cause. After the Board denied the grievance, the Association filed a request for binding arbitration, thereby seeking a hearing on the facts of Gonzalez's discharge.

On April 24, 2006, the Board filed an action in the Chancery Division seeking to restrain arbitration. The Board argued that because Gonzalez was terminated under the fourteen-day notice provision of his individual employment contract, the matter was not arbitrable under the CNA.

The Chancery Division granted the motion to restrain arbitration permanently, noting that the individual employment contract's termination-on-notice clause did not conflict with the CNA's just-cause provision.

The Association appealed. The Appellate Division stayed oral arguments until this Court had the opportunity to issue decisions in *Pascack Valley Regional High School Board of Education v. Pascack Valley Regional Support Staff Ass'n*, 192 *N.J.* 489, 933 *A.*2d 589 (2007), and *Northvale Board of Education v. Northvale Education Ass'n*, 192 *N.J.* 501, 933 *A.*2d 596 (2007), which involved issues similar to those presented here. On April 21, 2008, the Appellate Division affirmed the trial court's judgment, relying heavily on the ruling in *Pascack Valley*.

*Pascack Valley* also involved a custodian accused of inappropriate behavior at work. 192 *N.J.* at 493, 933 *A.*2d 589. After a disciplinary hearing, he was terminated in the middle of his employment contract under a similarly-worded clause that provided for fifteen, rather than fourteen, days' notice. *Id.* at 492–94, 933 *A.*2d 589. As in this case, the custodian's employment was also governed by a CNA containing a just-cause provision. That clause stated that disciplinary action was subject to a grievance procedure. In a separate sentence, the CNA added that *"[a]ny dismissal or suspension shall be considered a disciplinary action and shall at the option of the custodian ... be subject to the Grievance Procedure." Id.* at 492, 933 *A.*2d 589 (emphasis added). After analyzing the individual and collective agreements and relevant case law, this Court concluded that arbitration was required for dismissal of a custodian under the specific terms of the CNA. *Id.* at 500, 933 *A.*2d 589.

In this case, the Appellate Division found the above underscored language—not present in the Mt. Holly CNA—to be dispositive of the appeal. The panel concluded that the quoted passage was critical to this Court's holding in *Pascack Valley.* In the absence of identical or comparable language, the panel found, the Board was entitled to terminate Gonzalez on fourteen days' notice under the individual employment agreement, without showing just cause or having its termination decision subject to the CNA's grievance procedure.

The panel went on to note that Gonzalez could nonetheless obtain a statement of reasons for his termination and a hearing under Article IX(E)(3) of the CNA.

We granted the Association's petition for certification. 196 *N.J.* 346, 953 *A.*2d 764 (2008).

## II.

The Association argues that Gonzalez has a contractual right to arbitration under the CNA, which cannot be voided by his individual employment contract. The Association contends that the Appellate Division erred in the way it applied *Pascack Valley* to this case and overlooked the import of the presumption in favor of arbitrability in *N.J.S.A.* 34:13A-5.3. The Appellate Division ruling, it argues, undermines the constitutional and statutory rights of public employees to negotiate collectively with their employers. In addition, the Association submits that the existence of a procedure for obtaining a statement of reasons and a hearing regarding termination does not eliminate the CNA's grievance procedures.

The Board urges this Court to affirm the Appellate Division decision. The Board contends that the issue presented has already been resolved by *Camden Board of Education v. Alexander,* 181 *N.J.* 187, 854 *A.*2d 342 (2004), and that the amendment to *N.J.S.A.* 34:13A-5.3 following that decision—and adding a presumption in favor of arbitrability—is not relevant here. The Board also relies on *Northvale, supra,* in which an Appellate Division decision restraining arbitration was affirmed by a 3-3

vote. 192 *N.J.* at 501, 933 *A.*2d 596. In addition, the Board maintains that there is no conflict between the notice provision of the individual contract and the just-cause language in the CNA.

## III.

The interplay between independent employment contracts and CNAs is best understood in the context of the overall framework and historical purpose of collective labor negotiations.

■ The State Constitution guarantees public employees "the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their choosing." *N.J. Const.* art. I, ¶ 19. Although they do not have the right to "bargain collectively" like their counterparts in the private sector, *id.*, public employees may instead engage in "collective negotiations." *Camden, supra,* 181 *N.J.* at 194, 854 *A.*2d 342 (citing *N.J. State College Locals v. State Bd. of Higher Educ.,* 91 *N.J.* 18, 25–26, 449 *A.*2d 1244 (1982)). *See generally Lullo, supra,* 55 *N.J.* at 436–41, 262 *A.*2d 681 (discussing distinction between "collective bargaining" and "collective negotiations").

■ In addition to the constitutional provision, the Legislature has enacted a body of laws governing labor relations in the public and private sectors. *See N.J.S.A.* 34:13A–1 to –39 (known as the "New Jersey Employer–Employee Relations Act" and referred to here as the "Act"). Under the Act, public employees may select representatives to act on their behalf as "the exclusive representatives for collective negotiation concerning the terms and conditions of employment of the employees." *N.J.S.A.* 34:13A–5.3. Representatives are charged with protecting and advancing the interests of the majority in collective negotiations. *Troy, supra,* 168 *N.J.* at 372, 774 *A.*2d 476. Individual employees retain no separate negotiating rights.[1] *Id.*

---

[1] Public school employees are also subject to the provisions of the Education Law, *N.J.S.A.* 18A:1–1 to :76–4, which authorizes school boards to "make such

The now-recognized practice of collective negotiations is tied to the origin of the labor union movement. That "movement was born of the realization that a single employee had no substantial economic strength. He had little leverage beyond the sale of his own efforts to aid him in obtaining fair wages, hours of work and working conditions." *Lullo, supra,* 55 *N.J.* at 425, 262 *A.*2d 681. Banding together in a union, though, provided "strength and a means of achieving an equitable balance of bargaining power with employers." *Ibid.* The Act helped achieve that purpose "through the medium of collective agreement," which was intended "to supersede separate agreements with employees and to substitute a single compact with terms which reflect the strength, negotiating power and welfare of the group." *Id.* at 429, 262 *A.*2d 681.

In supporting collective agreements over individual ones, this Court in *Lullo* relied heavily on the United States Supreme Court's decision in *J.I. Case Co. v. NLRB,* 321 *U.S.* 332, 64 *S.Ct.* 576, 88 *L.Ed.* 762 (1944). *Case* addressed an employer's refusal to bargain with a newly certified union representative about matters covered by pre-existing individual contracts. *Id.* at 334, 64 *S.Ct.* at 578, 88 *L.Ed.* at 765. In affirming an order directing the company to negotiate, in the context of the National Labor Relations Act, the Supreme Court noted that individual employment contracts are "subsidiary to the terms of the . . . [collective] agreement and may not waive any of its benefits." *Id.* at 336, 64 *S.Ct.* at 579, 88 *L.Ed.* at 767; *see Troy, supra,* 168 *N.J.* at 374, 774 *A.*2d 476. In short, *Case* explained that "[i]ndividual contracts cannot subtract from collective ones." *Case, supra,* 321 *U.S.* at 339, 64 *S.Ct.* at 581, 88 *L.Ed.* at 768.

*Case* left open the question whether an employee could enforce a more advantageous, individual agreement. *Id.* at 338, 64 *S.Ct.* at 580, 88 *L.Ed.* at 768. This Court turned to that very issue in 2001

---

rules and regulations . . . as may be necessary for the employment, discharge, management and control of the public school janitors, janitor engineers, custodians or janitorial employees of the district," *N.J.S.A.* 18A:17–41.

in *Troy*, when it considered whether a CNA superseded individual employment contracts of tenured university professors. The professors were attempting to enforce a more favorable individual contract provision entitling them to calendar-year, rather than academic-year, appointments under the CNA. *Troy, supra,* 168 *N.J.* at 358–61, 774 *A*.2d 476. In upholding the individual agreements, the Court noted they did not conflict with the CNA or diminish any rights it provided. *Id.* at 376, 774 *A*.2d 476. In addition, the union had agreed to allow faculty members to enforce the individual contract rights. *Ibid.* As a result, the Court explained, its holding "undermine[d] neither the fundamental importance nor the function of collective agreements." *Id.* at 378, 774 *A*.2d 476.

We now reaffirm the principles articulated in *Lullo* and *Troy:* in general, collective agreements supersede individual contracts. To the extent provisions in an individual employment contract conflict or are inconsistent with terms in a collectively negotiated agreement, and diminish or interfere with rights provided by the CNA, the language in the individual contract must yield to the CNA. That approach properly respects agreements hammered out by both sides at the negotiating table. To proceed otherwise would undermine collective negotiations.

## IV.

In applying those principles to the facts of this case, we find that Gonzalez's individual employment contract conflicts with and diminishes his rights under the CNA and must yield to the collective agreement. He is therefore entitled to an arbitration hearing.

The basis for the Union's grievance is that Gonzalez was discharged without a showing of just cause, as required by Article IX(B) of the CNA. That alleged violation of the collective agreement satisfies the CNA's definition of "grievance" in Article XV(A)(1): "a breach ... or improper application of the terms of

this Agreement." The Union therefore grieved the decision to terminate Gonzalez and sought arbitration.

The language in Article IX(B) of the CNA—"[n]o employee shall be discharged . . . without just cause"—applies to all covered employees including custodians. Such an action, according to the CNA, "shall be subject to the grievance procedure herein set forth," which allows for binding arbitration. Gonzalez's individual employment contract, though, states that it "may at any time be terminated by either party" on fourteen days' written notice.

There is a real conflict between the two documents. Reduced to its essence, under the Board's view, Gonzalez is entitled only to 14-days' advance notice before termination and no hearing before an arbitrator. The CNA, however, gives Gonzalez the right to be employed for the full one-year term of his individual contract unless just cause for dismissal exists. He is also entitled to challenge the basis for dismissal before a neutral arbitrator by filing a grievance and requesting a hearing. The two approaches cannot co-exist; the individual agreement interferes with and diminishes Gonzalez's rights under the CNA.

The Board argues there is no conflict because Gonzalez was terminated under his employment contract and not disciplined under the CNA. Only the latter situation, the Board claims, calls for grievance arbitration. But under the CNA, the act of *discharging* an employee without just cause entitles an employee to grievance arbitration. *See* Art. IX(B). The Board's argument, therefore, reads the word "discharged" out of the contract that both sides agreed to. It also glosses over the reality of what occurred here: Gonzalez was fired in the middle of his contract. Whether one calls that a "discharge" or "termination" of a contract makes little difference. As counsel for the Board conceded at oral argument, the distinction between the terms is, to an extent, a matter of semantics.

The Board also suggests that no conflict is present because employees receive a benefit under the individual contract not called for by the CNA: fourteen days' notice with pay. In

addition, school districts have to notify the State Board of Examiners if a non-tenured employee is dismissed for cause but not if he or she is terminated under an individual employment agreement. *See N.J.S.A.* 18A:16–1.3. In the case of a for-cause dismissal, the State must also maintain the employee's name on a list that can be checked by prospective employers. *Id.* To the extent those differences are considered benefits, they cannot mask the fact that a real conflict nevertheless exists: under the CNA, Gonzalez could not be discharged without just cause and was entitled to grievance arbitration; under the individual contract, he could be fired without cause on 14 days' notice.

In reaching a contrary result, the Appellate Division placed too much reliance on the specific words used in the CNA involved in *Pascack Valley.* As discussed previously, *Pascack Valley* concluded that arbitration was required for a mid-contract dismissal of a custodian who was discharged after a disciplinary hearing. 192 *N.J.* at 500, 933 *A.2d* 589. In so ruling, this Court interpreted the CNA before it. Although the employee had an individual employment contract providing for fifteen days' notice, the CNA declared that "[a]ny dismissal or suspension shall be considered a disciplinary action and shall at the option of the custodian ... be subject to the Grievance Procedure." *Id.* at 492, 933 *A.2d* 589. Among other things, this Court found that the employer's use of the individual contract was an effort to bypass the protections of the CNA and therefore ordered arbitration. *Id.* at 499, 933 *A.2d* 589.

In this case, the Appellate Division reasoned that because the present CNA does not contain the sentence quoted above or a comparable provision, Gonzalez could be terminated on fourteen days' notice. Such an approach is too restrictive. The proper course is to look at the words agreed to by the parties to see if a conflict exists. *See Troy, supra,* 168 *N.J.* at 376, 774 *A.2d* 476. No special phrases or formulaic words are required. In particular, CNAs need not parrot the language used in the contract in *Pascack Valley.* Here, the CNA provided certain protections to all discharged employees. Because the termination-on-notice lan-

guage in the individual contract diminishes those rights, its con-flicting course cannot survive.

■ The Board mistakenly suggests that *Camden* requires a different outcome.[2] *Camden, supra,* focused on a school board's decision not to renew custodians at the end of their annual contracts. 181 *N.J.* at 190, 854 *A.*2d 342. Unlike Gonzalez, the custodians were not discharged mid-contract. Plus, the CNA in question was silent on whether non-renewal for disciplinary rea-sons was subject to arbitration. *Id.* at 196, 854 *A.*2d 342. *Camden* therefore does not apply to the facts of this case: the discharge of an employee in the middle of a contract, when the relevant CNA declares that employees cannot be discharged with-out just cause.

In addition, the majority opinion in *Camden* focused on the Board's right not to renew non-tenured school employees under *N.J.S.A.* 18A:27–4.1(b) and determined that the CNA did not specifically waive that right. 181 *N.J.* at 195–203, 854 *A.*2d 342. The custodians, therefore, were not entitled to arbitrate their claims. In reaching that conclusion, the Court explained that prior decisions had not extended the presumption in favor of arbitrability, stemming from the "*Steelworkers* Trilogy,"[3] from private- to public-sector contracts. *Id.* at 203–05, 854 *A.*2d 342.

---

[2] The Board also relies on this Court's 3–3 decision in *Northvale.* 192 *N.J.* at 501, 933 *A.*2d 596. *Northvale* addressed the termination of a part-time teacher and part-time secretary in the middle of a one-year contract. The school board terminated the employee on sixty days' notice pursuant to her individual employ-ment contract. *Ibid.* She, in turn, sought grievance arbitration under a CNA that had a just-cause provision similar to the one in the Mt. Holly CNA. *Id.* at 509, 933 *A.*2d 596. Because this Court was equally divided, its concurring and dissenting opinions are not precedential. *See Abbamont v. Piscataway Twp. Bd. of Educ.,* 314 *N.J.Super.* 293, 301, 714 *A.*2d 958 (App.Div.1998), *aff'd,* 163 *N.J.* 14, 746 *A.*2d 997 (1999). The Appellate Division's unpublished opinion is likewise not precedential. *R.* 1:36–3. As a result, we do not address *Northvale* at length, even though we consider a number of issues relevant to both cases in this opinion.

[3] *United Steelworkers of Am. v. Am. Mfg. Co.,* 363 *U.S.* 564, 80 *S.Ct.* 1343, 4 *L.Ed.*2d 1403 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation*

In the aftermath of *Camden*, the Legislature amended *N.J.S.A.*
34:13A–5.3, effective January 12, 2006, and adopted the following
presumption of arbitrability for public employees: "In interpreting
the meaning and extent of a provision of a collective negotiation
agreement providing for grievance arbitration, a court or agency
shall be bound by a presumption in favor of arbitration. Doubts
as to the scope of an arbitration clause shall be resolved in favor of
requiring arbitration." The Legislature, thus, overruled *Camden*
on this issue. *Bd. of Educ. of Alpha v. Alpha Educ. Ass'n*, 190
*N.J.* 34, 48, 918 *A.*2d 579 (2006).

■ Requiring arbitration in this case is consistent with the
Legislature's amendment to *N.J.S.A.* 34:13A–5.3 extending a pre-
sumption in favor of arbitration to public employees. That statu-
tory presumption also reaffirms the principle that "[a]rbitration is
a favored means of resolving labor disputes." *Pascack Valley*,
*supra*, 192 *N.J.* at 496, 933 *A.*2d 589 (citations and internal
quotation marks omitted).

## V.

■ We address briefly Article IX(E)(3) of the CNA, which
entitles employees to a statement of reasons and a hearing.
Because it supplements the grievance arbitration process, the
clause does not alter the outcome in this case.

Article IX(E)(3) provides that "[a]ny employee who does not
receive a new contract or whose services are terminated or
suspended or who is disciplined or reprimanded or who is reduced
in rank or compensation" is entitled to a statement of reasons and
a hearing before the Board on request. The clause mirrors
language contained in *N.J.S.A.* 18A:27–4.1(b), which is designed to
permit employees whose contracts are not renewed an opportunity
"to convince the members of the board to offer reemployment."

Co., 363 *U.S.* 574, 80 *S.Ct.* 1347, 4 *L.Ed.*2d 1409 (1960); *United Steelworkers of
Am. v. Enterprise Wheel & Car Corp.*, 363 *U.S.* 593, 80 *S.Ct.* 1358, 4 *L.Ed.*2d 1424
(1960).

The additional language in the CNA neither expressly nor by implication supersedes an employee's right to pursue grievance arbitration under Article IX(B). For some employees, like those whose contracts are not renewed and cannot file a grievance under the CNA, Article IX(E)(3) is their only recourse. Others, like Gonzalez, may choose either or both options. Article IX(E)(3), though, viewed in its entirety, cannot be read to bar grievance arbitration. It provides for a statement of reasons and a hearing for the full range of events covered by Article IX(B)'s just-cause provision. In other words, not only discharged employees, but also those disciplined, reprimanded, or reduced in rank or pay, may seek a statement of reasons and a hearing. Surely, the latter employees are entitled to file a grievance under the plain language of Article IX(B). The same holds true for an employee who is discharged or terminated. The opportunity for a statement of reasons and hearing therefore supplements, but does not replace, the right to grievance arbitration.

## VI.

For the reasons set forth above, we reverse the judgment of the Appellate Division and remand for arbitration.
•

Justice RIVERA–SOTO, dissenting.

Under the mantle of "reaffirm[ing] principles established in *Lullo v. International Ass'n of Fire Fighters,* 55 *N.J.* 409, 428, 262 *A.*2d 681 (1970), and *Troy v. Rutgers,* 168 *N.J.* 354, 375–76, 774 *A.*2d 476 (2001)," the majority "conclude[s] that when provisions in an individual employment contract conflict with the terms in a [collective negotiations agreement (CNA) ], and diminish or interfere with rights provided by the CNA, the language in the individual contract must yield to the collective agreement." *Ante* at 329, 972 *A.*2d at 392. The majority also asserts that, in doing so, it has taken an "approach [that] is consistent with the Legislature's recent command that in interpreting the meaning of a grievance arbitration clause, 'doubts should be resolved in favor of

requiring arbitration.' *Ante* at 323, 972 *A.*2d at 389 (quoting *N.J.S.A.* 34:13A–5.3"). The majority therefore determines that, "on remand, [the employee whose individual employment contract was terminated pursuant to that contract] is entitled to a hearing before an arbitrator to address the grievance filed [under the CNA]." *Ante* at 323, 972 *A.*2d at 389.

Because the majority's reasoning and conclusion are in error, I respectfully dissent.

## I.

The majority aptly summarizes the facts relevant to this appeal. I underscore, however, the following.

On May 5, 2005, plaintiff Mt. Holly Township Board of Education (Board of Education) and defendant Juan Gonzalez entered into a written one-year contract, to run from July 1, 2005 to June 30, 2006, whereby Gonzalez would serve as a custodian in plaintiff's schools. That contract specifically, clearly and unequivocally provided as follows:

> It is hereby agreed by the parties hereto that this contract may at any time be terminated by either party giving to the other fourteen day[s'] notice in writing of intention to terminate the same, but that in the absence of any provision herein for a definite number of days' notice, the contract shall run for the full term named above.

Tellingly, Gonzalez does not claim that the termination of his employment contract was in any wise procedurally improper: the requisite notice of termination in the proper form was in fact provided to him.[1]

---

[1] Also, no quarrel is asserted explicitly in this record over the basis of Gonzalez's employment termination: the fact that Gonzalez struck another custodian. Although the majority asserts that "[t]he basis for the Union's grievance is that Gonzalez was discharged without a showing of just cause, as required by Article IX(b) of the CNA[,]" *ante* at 329–30, 972 *A.*2d at 392–93, neither the grievance nor the later arbitration demand filed by the Union on Gonzalez's behalf is reproduced anywhere in this record. Therefore, one cannot tell with certainty whether Gonzalez objected to the basis for his termination, or

By virtue of his employment, Gonzalez also was a member of the Mt. Holly Township Education Association (Union). Section IX(B) of the then relevant CNA between the Board of Education and the Union provided that "[n]o employee shall be discharged, disciplined, reprimanded, reduced in rank or compensation, or deprived of any professional advantage or given an adverse evaluation of his/her professional services without just cause" and that "[a]ny such action asserted by the Board [of Education] or any agent or representative thereof, shall be subject to the grievance procedure herein set forth." In addition to a general grievance procedure described in Section II, below, a specific "employee rights" procedure applicable to custodians, as set forth in Section IX(E)(3) of the CNA, provided in full as follows:

> Any employee who does not receive a new contract[,] or whose services are terminated or suspended[,] or who is disciplined or reprimanded[,] or who is reduced in rank or compensation shall within five (5) working days request in writing directed to the Superintendent a statement of reasons for the above mentioned. Said statement of reasons shall be given to the employee within seven (7) working days after the receipt of the request. In addition, the employee shall be granted a hearing before the Board of Education [if] the employee requests the same. Said request for a hearing shall be in writing and made within five (5) working days of the receipt of the statement of reasons. The Board [of Education] shall hold its hearing at its regular board meeting unless the next regularly scheduled Board [of Education] meeting is less than ten (10) days from the date of the request for the hearing is received. In that event, the hearing shall be continued until the next following regularly scheduled Board [of Education] meeting. The employee must be present at the hearing and shall have at his/her option the right to have a representative present. The Board of Education shall issue to the employee a written determination within seven (7) working days after the completion of the hearing. The above time limits set forth in this document may be altered by mutual consent of the parties. The Superintendent shall meet privately with all employees who will not be renewed or who are terminated, prior to official written notification.

This provision may be deemed, in large measure, superfluous. Pursuant to *N.J.S.A.* 18A:27–4.1, an "employee whose employment contract is not renewed shall have the right to a written statement

the sanction imposed as a result thereof, or the manner in which either was reached, or any combination thereof.

of reasons for nonrenewal pursuant to [*N.J.S.A.* 18A:27–3.2][2] and to an informal appearance before the board." Section 4.1 explains that "[t]he purpose of the appearance shall be to permit the staff member to convince the members of the board to offer reemployment." *Ibid.* It also requires that "[t]he chief school administrator shall notify the officer or employee of the nonrenewal[.]" *Ibid.*

In respect of custodians, however, this contractual provision has independent importance. Unlike untenured teachers, who have a statutory right to receive either a written contract of employment, *N.J.S.A.* 18A:27–10, or a notice of nonrenewal, *N.J.S.A.* 18A:27–3.2, "[e]very public school janitor of a school district shall, unless he is appointed for a fixed term, hold his office, position or employment under tenure during good behavior and efficiency and shall not be dismissed or suspended or reduced in compensation." *N.J.S.A.* 18A:17–3. That said, *N.J.S.A.* 18A:17–41 specifically provides that "[t]he board of education of each district shall make such rules and regulations, not inconsistent with this title, as may be necessary for the employment, discharge, management and control of the public school janitor, janitor engineers, custodians or janitorial employees of the district."

As permitted by *N.J.S.A.* 18A:17–3, Gonzalez and the Board of Education agreed, in writing, that Gonzalez would be employed as a custodian for a period of one year and, more to the point, that his employment could be terminated—by either side—on fourteen days' notice. That termination by notice provision gives rise to this dispute.

## II.

Against this backdrop, the majority concludes that "Gonzalez's individual employment contract conflicts with and diminishes his

---

[2] *N.J.S.A.* 18A:27–3.2 provides that "[a]ny teaching staff member receiving notice that a teaching contract for the succeeding school year will not be offered may, within 15 days thereafter, request in writing a statement of the reasons for such nonemployment which shall be given to the teaching staff member in writing within 30 days after the receipt of such request."

rights under the CNA and must yield to the collective agreement[ and that h]e is therefore entitled to an arbitration hearing." *Ante* at 329–30, 972 *A.*2d at 392–93. There is, in the end, no real and true conflict between Gonzalez's individual employment contract and the CNA. For that reason and for the reasons so cogently set forth by both the trial court and the Appellate Division, I disagree.

The fatal flaw in the majority's reasoning is its uncritical acceptance of the ersatz proposition that the termination of Gonzalez's contract somehow conflicts with and therefore is subject to the general grievance procedure under the CNA. That assumption is wrong.

Section XV(A)(1) of the CNA defines a "grievance" as "an allegation that there has been a breach, misrepresentation or improper application of the terms of this Agreement, or a claimed violation, misinterpretation, or misapplication of rules or regulations, existing policies, or administrative decisions that affect the terms and conditions of employment." Yet, neither Gonzalez nor the Union ever alleged that anything in the termination of Gonzalez's written contract of employment constituted either "a breach, misrepresentation or improper application of the terms of this Agreement[.]" Nor did either Gonzalez or the Union ever claim that the termination of Gonzalez's employment with the Board of Educations constituted a "claimed violation, misinterpretation, or misapplication of rules or regulations, existing policies, or administrative decisions that affect the terms and conditions of employment." In short, Gonzalez's claims patently do not satisfy the CNA's definition of a "grievance" and, for that reason, the general grievance procedure under the CNA is not triggered. The necessary corollary to that conclusion also is compelled: when fairly read and interpreted in the context presented to us, Gonzalez's individual employment contract and the CNA can and do coexist, side by side, without conflict. In those circumstances, it is our unwavering obligation to enforce the bargain as struck between the parties. That bargain was that Gonzalez's employment could be terminated by the Board of Education on fourteen days' notice.

Focusing on *Pascack Valley Regional High School Board of Education v. Pascack Valley Regional Support Staff Association,* 192 *N.J.* 489, 933 *A.*2d 589 (2007), the Appellate Division explained that it "also involved a custodian who was terminated by the employer board of education in accordance with his individual employment contract, which was identical to the individual contract involved in this appeal except that it provided for fifteen, rather than fourteen, days notice of termination" (citing *Pascack Valley, supra,* 192 *N.J.* at 492–93, 933 *A.*2d 589). It noted that "[t]he employment relationship of the custodian involved in *Pascack Valley,* as in this case, was governed by a collectively negotiated agreement between the custodian's union and the employer board of education" (citing *id.* at 491–92, 933 *A.*2d 589), and that the *Pascack Valley* "agreement contained a provision prohibiting the discharge of any employee 'without just cause' and subjecting any such employment action to the grievance procedures of the contract" (citing *ibid.*). The panel underscored that "[t]he grievance provision of the collectively negotiated agreement involved in *Pascack Valley* was almost identical to the one involved in this appeal except that it contained an additional sentence, which we consider to be dispositive of this appeal." That additional sentence provided that "[a]ny dismissal or suspension shall be considered a disciplinary action and shall at the option of the custodian . . . be subject to the Grievance Procedure." *Pascack Valley, supra,* 192 *N.J.* at 492, 933 *A.*2d 589.

The Appellate Division correctly observed that, "[i]n concluding that the custodian involved in *Pascack Valley* was entitled to pursue a grievance, including arbitration of his termination for disciplinary reasons, the Court characterized the underscored sentence as 'expansive in its scope'" (citing *id.* at 499, 933 *A.*2d 589). It further explained that, in *Pascack Valley,* "[this] Court observed that this provision specified that any dismissal of a custodian would be considered to be a disciplinary action subject to a just cause analysis, and it gave the custodian the option to pursue a grievance and arbitration of any dismissal" (citing *ibid.* (internal quotation marks omitted)). It quoted at length the

following passage from *Pascack Valley, supra,* 192 *N.J.* at 499, 933 *A.*2d 589:

> Under these circumstances, the use of the individual contract's termination clause was not a termination for reason other than one that falls, by agreement, within the terms of the CNA. Rather, it was an effort to use the individual contract to bypass the protections that the Board agreed in the CNA would apply to discipline of all employees. As such, it was the disciplinary measure of dismissal that the CNA specifically gave the custodian the right to grieve through the arbitration mechanism.

The panel's analysis aptly paralleled that of this Court in *Pascack Valley:* the CNA between the Board of Education and the Union "did not contain the additional provision the Court found to be critical in *Pascack Valley*—that '[a]ny dismissal or suspension shall be considered a disciplinary action and shall at the option of the custodian ... be subject to the Grievance Procedure.' " (citing *id.* at 492, 933 *A.*2d 589). Rightly focusing on "the absence of this provision or any comparable provision that confers upon an employee subject to an individual employment contract the right to grieve a termination in accordance with the terms of that contract," the Appellate Division "concluded that the Board was entitled to terminate Gonzalez on fourteen days notice without showing just cause or having its termination decision subject to the grievance procedures of the collective negotiating agreement."

That conclusion is unassailable. It also compels the rejection of the majority's reasoning that indiscriminately would sweep in all terms of individual contracts within the limited embrace of a CNA. The proper scope of analysis remains as we described in *Pascack Valley:* breathing relevant meaning into the words to which the parties have agreed, without exceeding the agreed-upon parameters of those agreements. Because individual employment contracts are commonplace and, in some instances, required in the public education sphere, it is incumbent on the parties to a CNA to make absolutely clear any desire to have the more general provisions of the CNA overrule an individual contract's specific provisions. That result readily could have been achieved with the inclusion of the additional contractual language found dispositive

in *Pascack Valley* but utterly absent here.[3] Also, that result easily could have been achieved by expanding the definition of "grievance" to include the termination of an employee's individual contract, which, again, was not done here. Because neither effort was undertaken here, I would enforce the parties' agreement as written, and not as embellished and enhanced by the majority.

## III.

It is important to recognize—as the Appellate Division correctly did—that barring Gonzalez from recourse to the grievance procedure under the CNA does not leave him without a remedy. The panel properly recognized that "the 'employee rights' article of the collectively negotiated agreement established a procedure under which any employee whose contract was terminated or not renewed could obtain a statement of reasons for the employment action by the Superintendent of Schools and a hearing before the Board of Education." It observed that "this procedure applies both to terminations and to nonrenewals of employment contracts,

---

[3] Significantly, in *Pascack Valley* we noted "the particular circumstances of this matter, *where the parties have agreed* that the nontenured school employees may only be disciplined for just cause *and have defined* any dismissal as a disciplinary action subject to the grievance procedures at the employees' option," *supra*, 192 *N.J.* at 491, 933 *A.*2d 589 (emphasis supplied). In that distinct context, we pointedly observed that the

> CNA provisions [in *Pascack Valley* ] demonstrate that the parties agreed that, notwithstanding the terms of the individual contracts and the employer's unfettered right to terminate [an employee] on fifteen days' notice, where plaintiff did so only as a surrogate for a disciplinary proceeding, the act of termination became an act of discipline that the parties had specifically negotiated and agreed would be grievable at the custodian's option.
>
> [*Id.* at 499, 933 *A.*2d 589.]

The facts in this case stand in stark contrast to *Pascack Valley*. This record is utterly barren of any proofs that the parties ever negotiated, bargained for, or even discussed that the CNA would supersede and supplant the terms of any individual employment contracts or that the termination of an individual employment contract pursuant to its terms automatically would be subject to the CNA's grievance procedures. Yet, that is the necessary result reached by the majority.

which are expressly excluded from the definition of 'grievance' under the [CNA.]" It therefore concluded that "an employee could invoke the rights provided thereunder even if the Board's employment action is not subject to the grievance procedures of the [CNA]." And, as noted earlier in this opinion, those rights exist independently of the CNA; they are mandated by state law, namely, the interplay between *N.J.S.A.* 18A:27–4.1 and *N.J.S.A.* 18A:27–3.2.

The "employee rights" provision reflected in the CNA and state law is not an empty promise; they entail a statutorily designed system of procedures and appeals that greatly overshadows the limited appeal rights available from an arbitration award. Under that system, decisions by a board of education are reviewable in the first instance by the State Commissioner of Education. *See N.J.S.A.* 18A:6–9 (providing that "[t]he commissioner shall have jurisdiction to hear and determine, without cost to the parties, all controversies and disputes arising under the school laws, excepting those governing higher education, or under the rules of the state board or of the commissioner"). In turn, decisions of the State Commissioner of Education are reviewed as of right by the Appellate Division. *See N.J.S.A.* 18A:6–9.1(a) (explaining that "[n]otwithstanding the provisions of any law or regulation to the contrary, on and after the effective date [July 7, 2008] of this act determinations made by the Commissioner of Education in all controversies and disputes arising under the school laws shall be considered to be final agency action under the 'Administrative Procedure Act,' P.L.1968, c. 410 (C.52:14B–1 et seq.), and appeal of that action shall be directly to the Appellate Division of the Superior Court").[4] Yet, neither Gonzalez nor the Union ever invoked those "employee rights."

---

[4] Prior to July 7, 2008, appeals from the decisions of the State Commissioner of Education were to the then-State Board of Education. *See* former *N.J.S.A.* 18A:6–27, repealed by *L.* 2008, *c.* 36, § 7 (eff. July 7, 2008).

In light of the "employee rights" contractual and statutory decision review and appeals procedures attendant to the Board of Education's determination to terminate Gonzalez's employment, one is at a loss to fathom the majority's approach. The proper course would be that the as-of-right termination of a custodian's contract of employment be reviewed first by the relevant board of education, then by the State Commissioner of Education, and then by the Appellate Division.

## IV.

The appeal by Gonzalez and the Union fails in every meaningful respect: the termination of Gonzalez's employment contract was procedurally and substantively proper; there is no conflict between Gonzalez's individual employment contract and the CNA, much less one to justify nullifying portions of the individual contract; that termination does not fall within the definition of a "grievance" necessary as a condition precedent to trigger the grievance procedure under the CNA; Gonzalez never invoked the "employee rights" available to him under the CNA and as a matter of state law; and Gonzalez never sought to vindicate his rights via the appeals procedure provided to him. For each of those reasons, I respectfully dissent.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, ALBIN and WALLACE—4.

*For affirmance*—Justices LaVECCHIA, RIVERA–SOTO and HOENS—3.