**COLUMBIAN CARBON COMPANY,**
Appellant,

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NUMBER 405, AFL-CIO,** Appellee.

No. 22717.

United States Court of Appeals
Fifth Circuit.

May 17, 1966.

James C. Sanders, Culton, Morgan, Britain & White, Amarillo, Tex., for appellant.

Sam Houston Clinton, Jr., Austin, Tex., for appellee.

Before GEWIN and THORNBERRY, Circuit Judges, and WEST, District Judge.

THORNBERRY, Circuit Judge:

Appellee-Union brought this suit under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, on behalf of certain Company employees to compel arbitration of the question of wages paid temporary construction workers. The district court ordered arbitration, and we agree with that decision.

The Company contends that the temporary construction workers are not within the bargaining unit represented by the Union and that their wages are not covered by the collective bargaining contract between the Company and the Union. It asserts that the Union had never considered these workers as being members of the bargaining unit prior to this grievance and that the Court should give the contract the construction given to it by the parties. The Company states that the District Court order requiring arbitration requires the preliminary finding that the workers are within the bargaining unit and thus, in effect, determines the merits of the controversy. In addition, the Company states that the grievance does not allege a dispute concerning an employee who feels that he has been subjected to discriminatory treatment and therefore does not come within the arbitration provisions of Article VI of the contract.

The contract provisions in question are as follows:

"*Preamble*

"The Company * * * hereby recognizes the Union as exclusive repre-

sentative of the employees in the following described unit for the purpose of collective bargaining * * *:

"All employees of the * * * Seminole Plant * * *, except * * * employees appearing under the classification of *'temporary employees'* *roustabouts except as hereinafter provided.*

*        *        *        *        *        *

"*Article IV, Seniority*

"1. (a) * * * In the event it becomes necessary for the company to hire employees for a specific job not covered in the contract and such job is of a temporary nature, the employees shall not establish any seniority rights in the bargaining unit.

(b) *Temporary employees may be hired for a specific construction or repair job,* provided the Workmen's Committee is notified of the nature of the job to be performed and its expected duration. *Such employees shall receive the starting rate for new employees* for the duration of the job for which they are hired, regardless of whether or not it may continue for more than thirty (30) days.

*        *        *        *        *        *

"*Article VI*

"Any employee who feels that he has been subjected to discriminatory treatment shall promptly (within ten (10) days) attempt to adjust the matter with his foreman or appropriate supervisor. Failing to reach a satisfactory understanding or adjustment the aggrieved employee, within five (5) days thereafter, shall present in writing his case to the Workmen's Committee. In the event the Workmen's Committee decides the complaint has merit, they shall submit the same in writing to the Plant Superintendent within five (5) days. If the grievance is not satisfactorily adjusted between the Workmen's Committee and the Plant Superintendent within seven days from presentation, the case shall be referred to an arbitration commit-

tee consisting of three (3) members * * *. (Emphasis added.)

A brief discussion of the background is necessary in order to reach a decision as to whether the grievance involved is arbitrable. Development of a new process in 1961 and the resulting need for new facilities led to the hiring of some temporary construction workers. Their work was entirely separate from the production and maintenance operations in the plant itself. The starting rate for these employees was set at $1.75 by the Company without consulting the Union, since the Company believed that it had this right under Article IV, § 1(a). Work began in the early part of 1961 and continued through October 1964. It was not continuous, however, and all employees were hired on a temporary basis. When a job was completed and the supervisor could foresee another job in the near future, he would keep a few of his workers and turn them over to the plant maintenance and repair section. When working in the plant, these men were paid the starting rate for new employees of $2.42. When they returned to the construction crew, they reverted to the $1.75 rate. These construction workers did not receive any of the benefits enjoyed by production and maintenance workers in the plant, and none of them were members of the Union.

The Union made a "mild protest" during informal discussions on June 17, 1962. A letter stating the Company's position was sent to the Union with a reply requested if the Union disagreed. No reply was ever received.

One of the temporary construction workers, Bobby Flemmons, went to a Union meeting and complained that he and other temporary construction workers were entitled to the $2.42 rate and asked Union assistance. On September 28, 1963, the Union Workmen's Committee filed a grievance alleging that the complaint involved "a group" with the following grievance:

"We feel the company is violating Article IV, p.p.1, section B of the

contract by paying hot house repairmen or construction men less than the set pay scale in the contract."

A supplemental grievance filed by the Workmen's Committee requested that back wages equaling the difference between $2.42 and $1.75 be paid back to June 1, 1963. The Company received the grievance but refused to arbitrate.

The Supreme Court has discussed at length the court's role in interpreting arbitration agreements under § 301 of the Labor Management Relations Act.

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, *the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.*"

United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409. (Emphasis added.)

As noted by the Union, the Company's position is similar to that taken by Gulf in Gulf Oil Corp. v. International Union of Operating Engineers, 5th Cir. 1960, 279 F.2d 533, cert. denied, 364 U.S. 871, 81 S.Ct. 112, 5 L.Ed.2d 92. In that case Gulf argued that discharges were the prerogative of management and thus constituted a matter outside the contract not subject to arbitration. "Gulf's statement * * * that its right of hiring and firing 'is in nowise limited by the collective bargaining agreement' categorically assumes in Gulf's favor the very question to be decided, *whether the matter at issue properly arises under the contract.*" Id. at 535 (Emphasis in the original). The court concluded that the dispute was a complaint or grievance "arising under this contract" as provided by the arbitration clause and ordered Gulf to arbitrate.

■ Thus, in the present case, the Company argues that the temporary workers are not covered by the contract, while the Union says they are. The arbitration clause permits "*any* employee who feels that he has been subjected to discriminatory treatment" (Article IV, supra) to initiate proceedings leading to arbitration. A reading of the other provisions of the contract indicates that there is a good argument that such temporary workers are covered. (See Article IV, 1(b)). At least, it cannot be "said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," especially since "doubts should be resolved in favor of coverage."

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a *purpose to exclude the claim from arbitration* can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."

Id. 363 U.S. at 584–585, 80 S.Ct. at 1354, 4 L.Ed.2d at 1419 (Emphasis added); see Humble Oil & Ref. Co. v. Independent Indus. Workers Union, 5th Cir. 1964, 337 F.2d 321, cert. denied, 380 U.S. 952, 85 S.Ct. 1084, 13 L.Ed.2d 969.

■ The other objections raised by the Company appear to go to the procedure used in invoking arbitration. "Once it is determined * * * that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of

the dispute and bear on its final disposition should be left to the arbitrator." John Wiley & Sons, Inc. v. Livingston, 1964, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898; United Steelworkers v. American International Aluminum Corp., 5th Cir. 1965, 334 F.2d 147, 150, cert. denied, 379 U.S. 991, 85 S.Ct. 702, 13 L.Ed.2d 611.

As we said in Gulf Oil Corp. v. International Union of Operating Engineers, supra, 279 F.2d at 536:

> "Without, therefore, undertaking to determine what the facts are or will be shown to be in respect of the matter for arbitration or what the decision in the arbitration should be, we decide and hold only that the district court correctly determined that the controversy is arbitrable and that his judgment must be affirmed."

Affirmed.