975 A.2d 403

AMALGAMATED TRANSIT UNION, LOCAL 880, PLAINTIFF–RESPONDENT, v. NEW JERSEY TRANSIT BUS OPERATIONS, INC., DEFENDANT–APPELLANT.

Argued January 5, 2009—Decided July 15, 2009.

*Richard W. Schleifer,* Deputy Attorney General, argued the cause for appellant (*Anne Milgram,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*John A. Craner* argued the cause for respondent (*Craner, Satkin, Scheer, Schwartz & Arnold,* attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

In this appeal, we review an appellate judgment that upended an arbitration panel's determination that a probationary employee of New Jersey Transit Bus Operations, Inc. (NJ Transit) could not grieve his dismissal under the extant collective bargaining agreement (CBA). The arbitrators' award in NJ Transit's favor dismissed the grievance. Because we conclude that the arbitration panel properly engaged in its appropriate role as interpreter of the CBA's pertinent provisions, we defer to and uphold the arbitrators' reasonable ultimate determination. We therefore reverse the contrary judgment of the Appellate Division.

I.

On August 23, 2004, Juan Anaya applied for a position with NJ Transit. A portion of the application provided: "Serious moving violations or accident record may disqualify you. Therefore, list below ALL pending violations and ALL convictions for traffic violations (except parking) in the last (3) years. All applicants will

be thoroughly investigated. Therefore, any omission or willful mis-statement [sic] will be cause for disqualification for employment." Responding to questions in that section of the application, Anaya stated that his driver's license had been suspended from March through April 2004 due to unpaid parking tickets. He also certified that he did not have any driving convictions or criminal convictions.

On the same page of the application was an affidavit and authorization that Anaya signed, which provided:

> I hereby certify that the foregoing statements are true, complete and correct to the best of my knowledge and belief and are made in good faith. I further authorize representatives of the Company to verify any and all information contained herein and to review any and all criminal history and disciplinary records of any fact. . . I understand that if I am employed in a position covered by a labor agreement and successfully complete the probationary period prescribed by such agreement, NJ Transit may terminate my employment only in accordance with the provisions of the applicable labor agreement.

NJ Transit subsequently offered Anaya a job as a bus cleaner, a position covered by the CBA. The offer came in the form of a letter, dated September 15, 2004. Among other things, the letter informed Anaya that the probationary employment period was ninety days. Anaya accepted NJ Transit's offer by signing the letter, and began working six days later.

By operation of Section 1C of the CBA, Anaya became a member of Amalgamated Transit Union, Local 880 (Union) thirty days after he started employment with NJ Transit. Section 1C of the CBA explains when employees become members of the Union and, more germane to this appeal, when employees graduate from probationary status:

> [a]ll present employees and all new employees shall become and remain members in good standing of the Union as a condition of continuous employment with the Company. Employees entering the service of the Company shall become members of the Union after 30 days. However, *the 90-day probationary period agreed to by the employee on applying for a position with the Company will be recognized.* [ (Emphasis added).]

On October 5, 2004, during the thirty-day period before Anaya became a member of the Union, NJ Transit informed Anaya that his criminal background check uncovered information inconsistent

with his employment application. NJ Transit gave Anaya until October 26, 2004, to provide "a certified copy of the disposition and the accusatory instrument for each conviction [uncovered by the background investigation]." On November 10, 2004, Anaya attended a Probationary Employment Meeting, accompanied by a union representative (as the initial thirty-day period of employment had expired and Anaya had become a member of the Union entitled to representation), to discuss the falsifications that NJ Transit had uncovered in his employment application. After the meeting, NJ Transit terminated Anaya's employment. The November 10, 2004, letter of termination indicated that the false information in Anaya's employment application was the impetus for his termination.

Anaya took no immediate action. The Union, however, eventually filed a grievance on his behalf. That grievance proceeded to a hearing scheduled for June 6, 2006, before an arbitration panel. At the outset of that hearing, NJ Transit moved to dismiss the arbitration on the basis that a probationary employee's termination is not subject to the grievance procedure contained in the applicable CBA.

Section 1A of the CBA outlines the grievance procedure. That section provides:

Should any dispute or grievance arise between the Company and the Union, or any of its members, as to the interpretation, application, or operation of any provisions of this agreement, not specifically settled in said agreement, both parties shall endeavor to settle the question in the simplest and most direct manner. The procedure shall be as follows unless any step thereof is waived by mutual consent:

First: Such dispute or grievance is to be taken up between the employee and the Union representative and the supervisor, foreman, or department head.

Second: Between the President or Business Agent of the Union and/or the State Business Agent of the Union and the Division Manager or department head....

Third: Between the President or Business Agent of the Local involved and/or the State Business Agent of the Union and the General Manager of the Company....

Fourth: It is the stated intent and purpose of both parties at all times to reach agreement by negotiation between the Company and the Union, without recourse to arbitration. In the event, however, that such dispute or grievance is not settled to the satisfaction of the parties through recourse to the third step, the dispute or

grievance may be referred, on the request, in writing, by any Division of the State Council of the Union, or Company, to a temporary arbitration board of two. . . After the appointment of the third arbitrator, the Arbitration Board shall meet for the purpose of reaching a determination of the dispute or grievance, and the decision of the majority of the board, submitted in writing, to the Company and the Union, shall be final and binding upon both parties . . .

In addition to setting forth the grievance procedure, Section 1A also dictates the scope of an arbitrator's power over such disputes.

Authority of the arbitration board shall be limited to the determination of the dispute or grievance arising out of the interpretation, application or operation of the provisions of this agreement, on submission of the issues involved by the parties to this agreement. It shall not have any authority whatsoever to alter, amend or modify any of the provisions of this agreement.

After considering the parties' legal submissions on whether Anaya was entitled to employ the parties' grievance procedure, the arbitration panel granted NJ Transit's motion to dismiss the grievance. The panel's opinion outlined the parties' arguments, and then set forth its reasoning for the decision, which we repeat in its entirety:

The parties have contracted to provide the arbitrator with the right to determine any dispute or grievance arising out of the interpretation, application or operation of the provisions of this agreement. Section 1A. Whether a probationary employee is to be treated like a non-probationary employee is answered by the agreement.

In Section 1C, all employees, both present and new, are to become members of the Union within 30 days and remain members of the Union as a condition of employment. Therefore, after thirty days, Mr. Anaya became a Union member. "However," the collective bargaining agreement notes, "the 90-day probationary period agreed to by the employee on applying for a position with the Company will be recognized." Clearly, then, the parties intended to somehow limit the new employee's rights during his first ninety days[ ] with the Company.

That phrase from Section 1C recognized the probationary period "agreed to" by the new employee "on applying for a position with the Company". To determine precisely what Mr. Anaya "agreed to" "on applying for a position with the Company", we must look to the referenced employment application (Exh. U-1(A)). On page 4 of the NJ Transit Application for Employment, just above Mr Anaya's signature, he affirms *inter alia* that

 . I understand that if I am employed in a position covered by a labor agreement and successfully complete the probationary period prescribed by such agreement, NJ Transit may terminate my employment only in accordance with the provisions of the applicable labor agreement. . . .

The language limits the Company's right to terminate Mr. Anaya's employment (which was in fact "covered by a labor agreement") to a termination "in accordance with the provisions of the applicable labor agreement", but only if he successfully

completes the probationary period. Here, the Company terminated Mr. Anaya's employment before he completed the probationary period. Therefore, the termination was not required to have been in accordance with the provisions of the collective bargaining agreement.

Since the issue of Mr. Anaya's termination cannot be reviewed with reference to the collective bargaining agreement, and since this arbitration panel's jurisdiction is limited to "the interpretation, application or operation of the provisions" of that agreement, the grievance is hereby dismissed.

The Union thereafter filed a complaint and order to show cause in Superior Court to vacate the dismissal pursuant to *N.J.S.A.* 2A:24–8. According to the complaint, the arbitrators exceeded their authority under the CBA by deciding that Anaya's termination was not arbitrable.

On the return date of the order to show cause, the trial court reviewed the arbitrators' decision, the CBA, and other documents referenced in that decision, and concluded that the Union was not entitled to relief from the arbitrators' award. The court stated that the arbitrators "ultimately [found] that based on the contract language the matter was not arbitrable because the employee was not covered under the provisions of the grievance procedure based on the contract language." Observing that the arbitrators treated the issue as timely raised by NJ Transit (a decision with which the court would not interfere), the court agreed with the arbitrators' ultimate determination that the CBA's reference to the ninety-day probationary period could "only be read so as to be a limitation on the ... employee's rights during the probationary period." Finding no legitimate basis for vacating the arbitration award in favor of NJ Transit, the court dismissed the Union's complaint.

The Union appealed, and the Appellate Division, in an unpublished decision, reversed. At the outset, the Appellate Division emphasized that "New Jersey encourages the use of arbitration to resolve labor disputes." *See N.J.S.A.* 34:13A–2. The panel then turned to the question of arbitrability, which it perceived to be the key to resolving the dispute. As the panel framed the question, the outcome in this matter hinged on whether the question presented to the arbitrators was an issue of "substantive" or "procedural" arbitrability. It explained that "substantive" arbitra-

bility relates to "whether the particular grievance is within the scope of the arbitration clause specifying what the parties have agreed to arbitrate," citing *Standard Motor Freight, Inc. v. Local Union No. 560*, 49 *N.J.* 83, 96, 228 *A.*2d 329 (1967), while "procedural" arbitrability refers to "whether procedural conditions to arbitration have been met," *id.* at 97, 228 *A.*2d 329. The panel viewed the answer as determinative because questions of substantive arbitrability are to be decided by the courts unless the parties have agreed otherwise, *Laborers' Local Union Nos. 472 and 172 v. Interstate Curb & Sidewalk*, 90 *N.J.* 456, 463–64, 448 *A.*2d 980 (1982), whereas questions of procedural arbitrability are decided by the arbitrator, *Standard Motor Freight, supra*, 49 *N.J.* at 97, 228 *A.*2d 329. Ultimately, the panel characterized the dispute as a matter of substantive arbitrability and, thus, one for the courts to decide.

The panel then turned to interpret the CBA underlying the dispute. It found that the arbitration panel erred when it considered Anaya's employment application in addressing the arbitrability of his grievance. As the panel explained, because arbitrability should be determined solely on the basis of the CBA, use of the employment application was forbidden because it fell outside the four corners of the CBA. Focusing on the CBA's language, the panel noted that probationary employees are not expressly excluded from the grievance process outlined in Section 1A of the CBA and that Section 1C of the CBA makes all employees members of the Union after thirty days. In comparison, the panel observed that Subsection P(j) of the CBA treats part-time employees differently. That provision, which exclusively addresses part-time employees, explicitly provides that those employees only become entitled to the "grievance procedure after completion of the probationary period." Full-time employees are not similarly limited, according to the panel's reasoning, because comparable language is missing from Section 1C's reference to the ninety-day probation period.

Based on its review, the Appellate Division concluded that the Union was entitled to arbitrate Anaya's grievance because "the party seeking arbitration is making a claim which on its face is governed by the contract. This is so because a termination of employment is indisputably subject to grievance and arbitration under this CBA" (internal citations and quotations omitted). The panel therefore reversed the trial court judgment and remanded for arbitration before a new arbitration panel.

NJ Transit filed a petition for certification, which was granted on June 24, 2008. *Amalgamated Transit Union Local 880 v. N.J. Transit Bus Operations, Inc.*, 196 *N.J.* 87, 951 *A.*2d 1040 (2008).

## II.

■ The essential dispute in this matter is whether Anaya's status as a probationary employee precluded him from accessing the grievance procedure in the CBA to dispute his termination. The arbitration panel considering Anaya's claim reviewed and interpreted the relevant CBA language, and concluded that Anaya was not entitled to use the CBA's grievance provision to contest his termination during his probationary period. Therefore the grievance was dismissed. A trial court refused to vacate the arbitral determination, which it found to be reasonable; however, the Appellate Division viewed the matter differently on appeal. The Appellate Division declared the question—whether probationary employees were entitled to access the CBA's grievance procedure—one of substantive arbitrability for the court to decide anew.

The seminal case in New Jersey on arbitrability is *Standard Motor Freight, Inc. v. Local Union No. 560*, 49 *N.J.* 83, 228 *A.*2d 329 (1967), which explained that a CBA is more than just a contract. *Id.* at 88, 228 *A.*2d 329. "[I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant." *Ibid.* (internal citations omitted). In *Standard Motor Freight*, the

CBA provided for different grievance forums depending on the nature of the grievance, and the decision focused on which of three grievance forums provided by the CBA had jurisdiction over a particular union complaint. *Id.* at 85, 228 *A.*2d 329.

■■■ *Standard Motor Freight* separated arbitrability matters into two categories: "substantive" arbitrability and "procedural" arbitrability. *Id.* at 96–97, 228 *A.*2d 329. "Substantive" arbitrability refers to "whether the particular grievance is within the scope of the arbitration clause [in the CBA] specifying what the parties have agreed to arbitrate." *Id.* at 96, 228 *A.*2d 329. To determine a question about substantive arbitrability, a court need only decide "whether the party seeking arbitration is making a claim which on its face is governed by the [CBA]." *Ibid.* (internal quotations omitted). That determination is a function for the court, not the arbitrator, "absent clear expression in the contract to the contrary." *Ibid.* As we explained,

> a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.... *[T]he judicial inquiry .. must be strictly confined to the question whether the reluctant party* did agree to arbitrate the grievance or *did agree to give the arbitrator power to make the award he made.*
>
> [*Ibid.* (emphasis added) (internal quotations omitted).]

Confining courts to making assessments about substantive arbitrability effectuates the policy of ensuring that "the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *Id.* at 95, 228 *A.*2d 329 (internal quotations omitted); *see also Pascack Valley Reg'l High Sch. Bd. of Educ. v. Pascack Valley Reg'l Support Staff Ass'n,* 192 *N.J.* 489, 496, 933 *A.*2d 589 (2007) (reiterating that courts should decide only whether issue is facially subject to arbitration). As explained by the Supreme Court of the United States in the seminal *Steelworkers Trilogy* cases, when addressing such questions about arbitrability,

> [the court] is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.... [T]he moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

[*United Steelworkers of Am. v. Am. Mfg. Co.*, 363 *U.S.* 564, 567–68, 80 *S.Ct.* 1343, 1346, 4 *L.Ed.*2d 1403, 1407 (1960).]

■ "Procedural" arbitrability questions entail, on the other hand, "whether procedural conditions to arbitration have been met." *Standard Motor Freight, supra*, 49 *N.J.* at 97, 228 *A.2d* 329.. The grievance process itself is used to decide matters of procedural arbitrability and, so, arbitrators are the decision-makers for those concerns.[1] *Ibid.* The distinction's premise—that courts ought not to intrude in the merits of an issue that the parties have agreed would be determined through the arbitration process—pragmatically reflects that

> ordinarily procedural problems in arbitrations cannot be answered without consideration of the merits of the dispute, in which a court should not become involved, and that undesirable delay and fragmentation would result from carving up the same dispute between a court and the arbitration forum when the substantive subject matter is arbitrable. . . . [P]rocedural disagreements [should be regarded] not as separate disputes but as aspects of the dispute which called the grievance procedures into play.
>
> [*Ibid.* (internal quotations omitted).]

More recently, we noted again the distinction between procedural versus substantive arbitrability in *Board of Education of the Borough of Alpha v. Alpha Education Ass'n*, 190 *N.J.* 34, 918 *A.2d* 579 (2006). In *Alpha*, a grievance, which was alleged to have been brought untimely, progressed to arbitration where the arbitrator was asked to determine whether the grievance should not be dismissed, despite the significant delay in its filing, due to the continuing nature of the violation. *Id.* at 36, 918 *A.2d* 579. The arbitrator framed the questions before him as:

1.) Was the grievance timely filed: If no, should the grievance be dismissed?

2.) If the grievance is not dismissed pursuant to question one, [d]id the Board of Education violate Article VIII [of the CBA] and past practice when it denied fully paid health insurance to certificated staff working twenty hours or more? If so, what is the remedy?

---

[1] After explaining the substantive versus procedural arbitrability distinction, we concluded that the question in *Standard Motor Freight*—which of the three arbitration tribunals should hear the grievance—was a procedural arbitrability question plainly within the CBA and, therefore, remained for the arbitrator to decide. *Id.* at 102, 228 *A.2d* 329.

[*Id.* at 40, 918 *A.2d* 579.]

The arbitrator declared the first issue to be a question of procedural arbitrability for him to decide,[2] invoked the doctrine of continuing violation to determine that the grievance should not be regarded as untimely, and declined to dismiss the grievance on procedural grounds. *Ibid.*

When the matter reached our Court for review, we reiterated the distinction between substantive and procedural arbitrability, *id.* at 42–43, 918 *A.2d* 579, and concluded that the timeliness of the grievance represented a procedural arbitrability question because it required consideration of whether the conditions for filing a grievance had been met. *Id.* at 43, 918 *A.2d* 579. The remainder of our analysis focused on the proper standard of review for an award that incorporated an arbitrator's determination about procedural arbitrability. *Ibid.* Finding the answer governed by the standards in the New Jersey Arbitration Act, *N.J.S.A.* 2A:24–1 to –11, which limits the circumstances when a court may vacate an arbitration award, we concluded that a reviewing court must defer to reasonably debatable component findings and conclusions of an arbitrator's award. *Alpha, supra,* 190 *N.J.* at 42, 918 *A.2d* 579 (explaining that arbitrator's determinations that properly are for arbitrator to make are subject to "reasonably debatable" standard of review).

## III.

In the end, the question of substantive versus procedural arbitrability that the Appellate Division flagged in the present matter is largely irrelevant. Even if we assume that the Appellate Division's labeling of the issue as one of substantive arbitrabil-

---

[2] The parties in *Alpha* did not dispute that this issue was one of procedural arbitrability for the arbitrator to decide, nor did they dispute the substantive arbitrability of the underlying issue in dispute about eligibility for health insurance. *Id.* at 43, 918 *A.2d* 579. They conceded that the question was governed facially by the CBA and agreed, therefore, that the arbitrator was authorized to decide the merits of the issue in the first instance. *Ibid.*

ity was correct, the judicial remedy could not have provided anything more than that which Anaya already had received from the arbitral panel below, namely review by the arbitrators on this "dispute or grievance arising out of the interpretation, application or operation of the provisions of this [CBA]" over whether a terminated probationary employee could use the CBA's arbitration provision to grieve his dismissal.[3] Section 1A of the CBA clearly conferred that broadly stated power to interpret this CBA on the arbitrators. Thus, the CBA's arbitration provision granted to the arbitrators the authority to decide this question about their own jurisdiction. Any court looking at this CBA should have seen that it conferred broad interpretive power on the arbitrators and should have left the question for interpretation to the decision-makers designated by this CBA.

 Labeling the interpretative question before it "substantively arbitrable" did not license the Appellate Division to engage in contract interpretation itself. A court's duty is to refrain from adjudicating the merits of a dispute that properly belongs to an arbitrator:

> Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.... [T]he moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for. [*United Steelworkers, supra*, 363 *U.S.* at 568, 80 *S.Ct.* at 1346, 4 *L.Ed.*2d at 1407.]

---

[3] We assume, for purposes of this appeal, that a court reasonably could conclude that the question posed—whether a probationary employee such as Anaya was meant to have access to the CBA's grievance procedures—was an issue that was facially governed under the terms of the CBA and was, therefore, "substantively" arbitrable. In other words, the issue was one that, on its face, was meant to be answered through an interpretation of the terms of the CBA. *See Standard Motor Freight, supra*, 49 *N.J.* at 96, 228 *A.*2d 329. However, a limited declaration of substantive arbitrability was not what occurred.

That said, one could debate whether the question of a probationary employee's standing to pursue a grievance raises a procedural arbitrability issue for arbitrators to decide. Viewing "standing" as a "condition" that must be satisfied in order for arbitration to occur, a viable claim of procedural arbitrability could be advanced. However, we need not conclude whether the issue is better characterized as one of procedural arbitrability because, as discussed *infra*, it would not alter our conclusion.

When this matter reached the Appellate Division and it engaged in an analysis for substantive versus procedural arbitrability, its declaration that the matter was substantively arbitrable did not authorize the court to engage in contract interpretation. *See Bd. of Educ. v. Bloomfield Educ. Ass'n*, 251 *N.J.Super.* 379, 384, 598 *A.*2d 518 (App.Div.1990) (stating that "in determining whether a matter is arbitrable, the court is limited to ascertaining whether the party seeking arbitration is making a claim which, on its face, is covered by the contract and within the arbitration clause. The court may not, in any way, pass upon the merits of the actual dispute" (citing *Jersey Cent. Power & Light Co. v. Local Union No. 1289*, 38 *N.J.* 95, 104, 183 *A.*2d 41 (1962)) (internal quotations omitted)), *aff'd o.b.*, 126 *N.J.* 300, 598 *A.*2d 517 (1991). Having identified a question that required an interpretation of the CBA, the Appellate Division went "astray" by intruding in the task of CBA interpretation.[4] *See Kaleva–Norman–Dickson Sch. Dist. No. 6 v. Kaleva–Norman–Dickson Sch. Teachers' Ass'n*, 393 *Mich.* 583, 227 *N.W.*2d 500, 506 (1975) ("Where a court finds itself weighing the pros and cons of each party's interpretation of substantive provisions of the contract, it is likely that the court has gone astray. The question for the court is not whether one interpretation or another is correct, but whether the parties have agreed that an arbitrator shall decide which of the competing interpretations is correct.").

In short, whether a probationary employee could access the grievance procedure to challenge his termination was a matter the CBA authorized the arbitrators to decide. *See Standard Motor Freight, supra*, 49 *N.J.* at 95, 228 *A.*2d 329 (discussing policy of ensuring that "the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play" (internal quotations omitted)); *see generally* 48 Am. Jur.2d *Labor and Labor Relations* § 365 (2005) (noting cases

---

[4] The Appellate Division engaged in its own interpretation of the CBA and, furthermore, concluded that the individual employee applications and accompanying affidavits could not be incorporated by reference into the CBA.

where courts have recognized that disputes over whether employees come within CBA substantive protections are questions for arbitrator's determination when CBA generally allows for arbitration over CBA interpretative disputes). As noted, this CBA explicitly called for such determinations to be made by arbitrators. *See* Section 1A of CBA. And, in fact, the arbitral panel already had performed the precise task of CBA interpretation that a court's substantive arbitrability determination normally would have sent for arbitral determination, had this case proceeded via a course that brought the arbitrability dispute initially to the courts.

Instead, the procedural course that occurred in this matter resulted in having the appellate court belatedly insert an unnecessary substantive arbitrability analysis into the mix as the vehicle to justify overturning an arbitration determination with which it disagreed. That was error. The mandate to courts to leave questions of CBA interpretation and application to arbitrators requires a reviewing court to respect the decision of arbitrators, even when the court might reach a different determination. A court's role when reviewing an arbitrator's award is limited, *see* *N.J.S.A.* 2A:24–8, and a court should not interfere with an arbitrator's "reasonably debatable" decision, *see Alpha, supra,* 190 *N.J.* at 42, 918 *A.*2d 579, here as to whether a probationary employee was meant to have the ability to grieve his discharge under the terms of the CBA.

In this matter, when NJ Transit asked the arbitrators at the hearing on June 6, 2004, to dismiss the grievance and requested the opportunity to brief the question, an arbitrator restated the issue to be decided: "Given the probationary nature of Juan Anaya's employment at the time of his discharge, is he entitled to employ the party's grievance procedure?" The arbitral panel thus recognized that the first question to be answered was whether the issue was governed, on its face, by the CBA. The arbitral panel rightfully recognized that it was. The panel further recognized that the CBA's broadly worded provision on the scope of arbitrators' powers granted to arbitrators the right to decide the in-

terpretative question that would affect their jurisdiction to hear the merits of Anaya's termination. Thus, only if that interpretative question about arbitral jurisdiction was answered affirmatively would the arbitrators reach and review the merits of Anaya's termination. However, because the panel interpreted the CBA not to intend that the grievance and arbitration process be used to review terminations of probationary employees, it dismissed the Union's grievance that sought review of the merits of Anaya's termination.

That said, the arbitrators awkwardly phrased their conclusion in respect of the CBA-interpretation question before them. Although at times the panel referred to its inability to judge the dispute over Anaya's discharge as a lack of jurisdiction, the decision in its totality reveals the arbitrators' overarching determination that the CBA did not grant to probationary employees the right to grieve under the CBA's arbitration provision. The arbitrators' statement that they lacked jurisdiction was a declaration that Anaya, as a probationary employee, was not entitled to utilize the CBA's grievance procedures to bring before the arbitrators the merits of NJ Transit's determination to terminate his probationary employment. The language of their decision reflects that that was their considered interpretation of the CBA. Their award, dismissing the grievance, was consistent with that interpretative judgment.

To conclude, the Appellate Division's foray into substantive arbitrability was unnecessary and irrelevant because it could only have accomplished that which had already been obtained: an arbitrator's interpretation of this CBA concerning a probationary employee's right to invoke the grievance provision to secure a review of the merits of his termination. The arbitration panel performed its allotted interpretative task under this CBA. Its interpretation of the CBA and the documents found to be incorporated therein led the arbitral panel to conclude that probationary employees do not have the right to grieve. Because that question of CBA interpretation was properly before the arbitrators, we

defer to the arbitration panel's decision based on the "reasonably debatable" standard of review.[5] We conclude, and hold, that the arbitrators' reasonable determination must stand.

## IV.

The judgment of the Appellate Division is reversed and the judgment of the trial court, dismissing the Union's complaint, is reinstated.

Justice LONG, dissenting.

Although this case was a procedural anomaly, the fundamental questions it presents are relatively straightforward: who determines whether a matter is arbitrable; and, once a declaration of arbitrability issues, what is the function of the arbitration? Here, the union challenged a member's termination for supplying false information regarding his criminal history. The matter proceeded to arbitration, at which point the employer disputed the jurisdiction of the arbitrators, claiming that the employee's probationary status precluded resort to the grievance procedure set forth in the collective bargaining agreement (CBA).

---

[5] Mindful of that standard applicable to our review, we conclude that it was reasonable for the arbitrators to have considered the individual employment application signed by Anaya to be incorporated by reference by the CBA for purposes of resolving the instant interpretative question. *See Pascack, supra,* 192 *N.J.* at 498–500, 933 *A.2d* 589 (considering individual employment contracts that were referenced in collective negotiations agreement (CNA) to assist with interpreting CNA). As the panel's decision indicated, the CBA incorporated the ninety-day probationary period outlined in the individual employment applications, which are signed by employees when accepting employment. The CBA's incorporating reference demonstrated an implicit, if not explicit, respect for the meeting of the minds between employer and employee, upon hiring, that a ninety-day probationary period would apply to their relationship. Indeed, the CBA expressly "recognized" the application of such a probationary period for each new hire. As the arbitrators found, it is entirely inconsistent to say that the CBA recognizes that probationary period, and yet conclude that the CBA's full grievance process for employees would apply to a probationary employee who was told that NJ Transit would not be limited by those protections until the employee successfully completed the probationary period.

Instead of staying the arbitration in favor of a judicial determination of arbitrability or adjudicating the merits of the claim subject to a later judicial decision regarding arbitrability, the arbitrators decided that the employee was not entitled to arbitrate his claim and dismissed the grievance. When that award was confirmed, the Appellate Division reversed and ordered a new arbitration, declaring that the CBA was susceptible of an interpretation favoring arbitrability.

The majority disagrees, essentially adopting a no-harm, no-foul paradigm based on the notion that the employee in fact was permitted to arbitrate his grievance and thus received the process that was due. The problem with that analysis is that it is based on a faulty premise regarding the question to be arbitrated. The majority apparently views the arbitrable issue to be whether a probationary employee is entitled to access the grievance procedure. *Ante* at 119, 975 *A.*2d at 412–13. Because that is an issue that is reserved to the court and, in fact, was decided by the Appellate Division, it cannot be subject to second-guessing by the arbitrators. The arbitrators were limited to the question of the propriety of the employee's termination. Because they never addressed that issue on the merits, the Appellate Division's order that a new arbitration take place was the only option. Insofar as the majority rules otherwise, I cannot join its opinion.

I.

The facts have been detailed in the majority opinion and will not be recounted here in full. In brief, Juan Anaya completed an application for employment with New Jersey Transit Bus Operations, Inc. ("NJ Transit"), and was hired as a bus cleaner. Following his thirtieth day of employment, Anaya became a member of Amalgamated Transit Union, Local 880 ("Union"), as required by the CBA. He was discharged on November 10, 2004, for falsifying his employment application by certifying that he had never been convicted of any "crime or offense." The Union denied that Anaya had been convicted of any crime or offense, arguing that

the "conditional discharge" he had received was not a conviction. It thus claimed that Anaya had not falsified his application, challenged his termination through the CBA's grievance procedure, and ultimately sought arbitration when the matter could not be resolved satisfactorily. NJ Transit objected to the arbitration on the ground that Anaya, a probationary employee, was not entitled to access the grievance procedure. The arbitrators agreed and dismissed the grievance. A trial judge confirmed that award and the Appellate Division reversed.

In doing so, the panel correctly recognized its role as the determiner of matters of "substantive" arbitrability. Substantive arbitrability refers to the pure question of "whether the particular grievance is within the scope of the arbitration clause." *Standard Motor Freight, Inc. v. Local Union No. 560, Int'l Bhd. of Teamsters*, 49 *N.J.* 83, 96, 228 *A.*2d 329 (1967). Relying on the language of the CBA, the panel concluded that the grievance was arbitrable. That decision was legally unexceptionable.

Section 1 of the CBA provides that "each employee covered in this agreement shall have the right provided in this agreement for the adjustment of grievances." Section 1A, in turn, outlines the grievance procedure, which governs "any dispute or grievance [that] arise[s] between the Company and the Union, or any of its members, as to the interpretation, application, or operation of any provisions of this agreement, not specifically settled in said agreement." Anaya became a Union member after thirty days as required by Section 1C of the CBA, which prescribes: "All present employees and all new employees shall become and remain members in good standing of the Union as a condition of continuous employment with the Company. Employees entering the service of the Company shall become members of the Union after 30 days." Accordingly, he was "covered" by the CBA.

Section 1C also provides that "the 90–day probationary period agreed to by the employee on applying for a position with the Company will be recognized." Of that provision, the Appellate Division stated the obvious—that it "does not *expressly* exclude

probationary employees from the right to grieve that is recognized in Section 1A." Contrapuntally, the panel noted that the CBA unequivocally excludes other categories of employees from the scope of arbitration, citing subsection P(j), which provides: "Part-time operators shall be entitled to, and covered by, the contract provisions of Union membership and check[-]off on a non-discriminatory basis, and the grievance procedure *after completion of the probationary period.*" [1] (Emphasis added). Given that the CBA granted Union members access to the grievance procedure and only conditioned that access on completion of the probationary period in respect of seasonal and part-time operators, the panel concluded, as a matter of law, that the Union was entitled to arbitrate Anaya's termination because

> "the party seeking arbitration is making a claim which on its face is governed by the contract." *Winston-Salem Mailers[ Union 133 v Media Gen. Operations, Inc*, 55 *Fed. App'x* 128, 134 (4th Cir.2003) (internal quotation marks and citation omitted) ]. This is so because a termination of employment is indisputably subject to grievance and arbitration under this CBA. As in *United Steelworkers [Steel Workers] of America, AFL-CIO v. Century Aluminum of Kentucky*, 157 *Fed. App'x* 869, 874 (6th Cir.2005), the Union, at the very least, is entitled to arbitrate the issue of Anaya's guilt.
>
> [ (Footnote omitted).]

The Appellate Division's analysis gives voice to the presumption in favor of arbitration, *see Pascack Valley Reg'l High Sch. Bd. of Educ. v. Pascack Valley Reg'l Support Staff Ass'n*, 192 *N.J.* 489, 496, 933 *A.2d* 589 (2007), and perfectly captures the notion of what is at the heart of the substantive-arbitrability inquiry: unless " 'the arbitration clause is *not susceptible* of an interpretation that covers the asserted dispute,' " the matter is arbitrable, *Standard Motor Freight, supra*, 49 *N.J.* at 96, 228 *A.2d* 329 (emphasis added) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 *U.S.* 574, 582–83, 80 *S.Ct.* 1347, 1353, 4 *L.Ed.2d* 1409, 1417 (1960)). "In the absence of any express provision excluding a particular grievance from arbitration, . . .

---

[1] Subsection Q of the CBA also excludes seasonal operators from resort to the grievance procedure until "after completion of the probationary period."

only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where ... the exclusion clause is vague and the arbitration clause quite broad." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co., supra,* 363 *U.S.* at 584–85, 80 *S.Ct.* at 1354, 4 *L.Ed.*2d at 1419. The CBA in this case contains no such forceful evidence of exclusion.

To the extent the majority suggests that the employment agreement was incorporated by reference into the CBA and circumscribed the right to grieve that was afforded to Union members, *ante* at 122 n. 5, 975 *A.*2d at 414 n. 5, it is wide of the mark. To be sure, a CBA can incorporate another document by reference and, when that occurs, the court will look to that document as well in deciding substantive arbitrability. *See Pascack Valley, supra,* 192 *N.J.* at 498–99, 933 *A.*2d 589. However, even if that is the case, where provisions in the incorporated document "conflict with the terms in a[CBA], and diminish or interfere with rights provided by the [CBA]," the conflicting language in the incorporated document "must yield to the collective agreement." *Mount Holly Twp. Bd. of Educ. v. Mount Holly Twp. Educ. Ass'n,* 199 *N.J.* 319, 322, 972 *A.*2d 387 (2009) (citing *Lullo v. Int'l Ass'n of Fire Fighters, Local 1066,* 55 *N.J.* 409, 428, 262 *A.*2d 681 (1970); *Troy v. Rutgers,* 168 *N.J.* 354, 375–76, 774 *A.*2d 476 (2001)).

Here, the CBA clearly denominates Union members as "covered" employees entitled to access the grievance procedure. Although the CBA also "recognize[s]" the probationary period, it does not condition a Union member's resort to the grievance procedure on completion of probation. The only exceptions in the CBA involve part-time and seasonal employees, who are specifically denied the right to the grievance procedure prior to their completion of probation. To the extent that the language of the employment agreement purports to apply that condition to all Union members, it effectively diminishes the rights afforded by the CBA and must, in any event, yield. *Ibid.* Thus, whether the CBA is viewed alone or in connection with the employment

agreement, the result is the same: the arbitration clause is susceptible of an interpretation that covers Anaya.

For me, the nub of this case is not the propriety of the court's decision regarding arbitrability, but what occurs thereafter. The majority apparently agrees with the Appellate Division's declaration of arbitrability, but views the question before the arbitrators to be whether a probationary employee may access the grievance procedures. *Ante* at 119, 975 *A.*2d at 412. Not so. That was the question that was substantively decided by the court and accordingly it was not subject to a rehash in arbitration.

When the question of arbitrability was answered affirmatively by the Appellate Division, only the merits of the grievance remained to be resolved. The issue at that point was whether Anaya's pre-employment representations warranted separation from service.[2] To be sure, if there had been purely procedural issues to be resolved, for example whether the steps of the grievance procedure had been satisfied, those issues would have been for arbitration. *Standard Motor Freight, supra,* 49 *N.J.* at 97, 228 *A.*2d 329 (citing *John Wiley & Sons, Inc. v. Livingston,* 376 *U.S.* 543, 557–59, 84 *S.Ct.* 909, 918–19, 11 *L.Ed.*2d 898, 909–10 (1964)); *see, e.g., Troy Chem. Corp. v. Teamsters Union Local No. 408,* 37 *F.*3d 123, 126 (3d Cir.1994) (holding that question of whether parties "had by practice waived steps 1 and 2 of the

---

[2] *Columbian Carbon Co. v. International Union of Operating Engineers, Local Union No. 405,* 360 *F.*2d 1018, 1020–21 (1966), provides an instructive application of that well-established framework. There, the employer argued that the grievants were not entitled to arbitrate their wage complaint because they were temporary employees. *Id.* at 1018. The union countered that the temporary workers were covered by the collective bargaining agreement because the arbitration clause permitted " '*any* employee' " to seek arbitration for such complaints. *Id.* at 1020. The court, noting that the collective bargaining agreement was susceptible of the union's interpretation, compelled arbitration of the wage dispute, *id.* at 1020–21, " '[w]ithout ... undertaking to determine what the facts are or will be shown to be in respect of the matter for arbitration or what the decision in the arbitration should be,' " *id.* at 1021 (quoting *Gulf Oil Corp. v. Int'l Union of Operating Eng'rs, Local No. 715,* 279 *F.*2d 533, 536 (5th Cir.), *cert. denied,* 364 *U.S.* 871, 81 *S.Ct.* 112, 5 *L.Ed.*2d 92 (1960))

grievance procedure was a question of procedure for the arbitrator and not the court"). What the arbitrators could not do was determine the fundamental issue of substantive arbitrability.

It follows that because the only matter decided by the arbitrators was beyond their ken, and the substance of the grievance was never reached, there is no role here for the reasonably-debatable standard. *See Bd. of Educ. of Alpha v. Alpha Educ. Ass'n*, 190 *N.J.* 34, 43, 918 *A.*2d 579 (2006) (citing *State v. Int'l Fed'n of Prof'l & Technical Eng'rs, Local 195*, 169 *N.J.* 505, 514, 780 *A.*2d 525 (2001)) (observing that reasonably-debatable standard applied because substantive arbitrability was undisputed and only procedural arbitrability was contested).

Here, the Appellate Division properly understood its role and rendered a determination of arbitrability that conformed in every respect to applicable labor-law principles. As a result, it reversed and remanded the matter for a merits determination by the arbitrators. Because I am in accord with that outcome, I respectfully dissent.

Justice ALBIN joins in this opinion.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LaVECCHIA, WALLACE, RIVERA–SOTO and HOENS—5.

*For affirmance*—Justices LONG and ALBIN—2.