**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0485-16T2
                    A-0486-16T2

BERGEN COUNTY SHERIFF'S
OFFICE and COUNTY OF BERGEN,

    Plaintiffs-Appellants,

v.

POLICEMEN'S BENEVOLENT
ASSOCIATION, LOCAL 49, BERGEN
COUNTY POLICE DEPARTMENT,

    Defendants-Respondents.

_____

Argued September 19, 2017 — Decided October 31, 2017

Before Judges Reisner, Hoffman, and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3627-16.

John J. McCann argued the cause for appellant Bergen County Sheriff's Office (C. Elston & Associates, LLC, attorneys; Mr. McCann, of counsel and on the briefs; Cathlene Y. Banker, on the briefs).

Frank P. Kapusinski, Assistant County Counsel, argued the cause for appellant County of Bergen (Julien X. Neals, County Counsel, attorney; Mr. Kapusinski, of counsel and on the briefs).

Michael A. Bukosky argued the cause for respondents (Loccke, Correia & Bukosky, attorneys; Mr. Bukosky, of counsel and on the brief).

PER CURIAM

The issue presented in these consolidated appeals is whether the County of Bergen (County) agreed, in a collective bargaining agreement, to arbitrate whether the County police officers would receive a retroactive pay increase if the Bergen County Police Department merged into the Bergen County Sheriff's Office (Sheriff's Office). The County contends that the Bergen County Police Department was realigned with, but not merged into, the Bergen County Sheriff's Office. The Police Benevolent Association, Local 49 (PBA 49), which represents the Bergen County police officers, argues that there was a merger thereby entitling County police officers to a retroactive pay raise.

We hold that the parties agreed to arbitrate all issues concerning the interpretation of the contract and, therefore, the underlying question concerning the pay increase is to be decided by the arbitrator. Our Supreme Court has instructed that if a collective bargaining agreement confers the issue of the interpretation of that agreement to an arbitrator, then the arbitrator, and not a court, must interpret the agreement. Amalgamated Transit Union, Local 880 v. N.J. Transit Bus

Operations, Inc., 200 N.J. 105, 118 (2009). Thus, we affirm an August 19, 2016 order denying the request by plaintiffs, the Sheriff's Office and the County (collectively, plaintiffs), to enjoin the arbitration and granting the motion of defendant PBA 49 to dismiss plaintiffs' complaint for a declaratory judgment.

I.

Historically, Bergen County has had a police department and a sheriff's office. The Administrative Code of Bergen County, adopted in 2007, stated that the "Police Department" was a division of the Department of Public Safety, led by a director appointed by the County Executive. That same Code identified the Sheriff as a constitutional officer and the head of a separate "department" with officers and employees under his or her jurisdiction.

The County and PBA 49 have been parties to a collective bargaining agreement (CBA) for several decades. As previously noted, PBA 49 represents the County police officers, except the chief and deputy chief. The base terms of the current CBA were agreed to in 2001, and that CBA has been extended and modified by agreements executed in 2002, 2010, 2011, and 2014.

For a number of years, the County has considered the idea of combining or reorganizing the Bergen County Police Department and the Sheriff's Office. In 2012, the Freeholders rejected a proposed ordinance to dissolve the County police and transfer its functions

A-0485-16T2

to the Sheriff's Office.  The following year, the Freeholders adopted Ordinance No. 13-27, transferring the County police to the Sheriff's Office.  The then County Executive vetoed that ordinance, and the Freeholders voted to override that veto.  That dispute between the County Executive and Freeholders engendered a lawsuit, which was later dismissed after a new County Executive was elected.

In January 2014, the County Executive executed an extension of the CBA with PBA 49 (the 2014 CBA Extension).  Among other things, the 2014 CBA Extension addressed the salaries of County police officers.  The 2014 CBA Extension provided that County police officers would receive certain salaries, however, if the County police were "merged/consolidated" into the Sheriff's Office, then the County police officers would receive different salaries, which effectively would be retroactively increased salaries.  Specifically, paragraph one of the 2014 CBA Extension states:

> 1.  Article VIII, Salaries — Attached as Exhibit A is a new salary guide for all officers hired after January 1, 2014. Current officers who have not achieved top pay will progress under the existing salary guide until he/she achieves top pay.  All officers will receive a 1.5% increase (applied to the salary guides) for each year of the agreement (January 1, 2014 — January 1, 2017). Article VIII, Paragraphs 1-4, 6-7 and Exhibit B are no longer operative, unless the County police are merged/consolidated into the Bergen County Sheriff's Office or disbanded, in which event,

4

> Paragraphs 1-4, 6-7 and Exhibit B become retroactively operative effective January 1, 2014.

On May 14, 2014, the Freeholders adopted a resolution approving the 2014 CBA Extension.

In January 2015, a new County Executive entered into a memorandum of agreement with the County Sheriff and Prosecutor that addressed the organization of the County Police Department (the 2015 MOA). The 2015 MOA stated that the Bergen County Police Department was being realigned with the Sheriff's Office. In that regard, the 2015 MOA provided that once the Freeholders adopted an ordinance transferring all operational and administrative authority over the County police to the Sheriff's Office, the County police will be known as "Bergen County Sheriff, Bureau of Police Services." The 2015 MOA goes on to provide that the Bergen County Police Department will continue to be a separate unit overseen by the Sheriff's Office and that there will be no changes required to any existing labor contracts. The 2015 MOA also states that the number of officers is expected to be reduced through attrition to a maximum level of 201 officers, representing a reduction of over fifty County police officers and the retention of the current authorized strength of 152 Sheriff's officers.

In January 2015, the Freeholders adopted Resolution No. 42-15, approving the 2015 MOA. The Freeholders also adopted an

ordinance reflecting the organizational transfer set forth in the 2015 MOA and identifying the Bergen County Police Department as "Bergen County Sheriff, Bureau of Police Services." Another ordinance established a table of organization for the County police for the "Post-Realignment Period."

In February 2016, PBA 49 filed a grievance under its CBA, alleging that the County police had merged into the Sheriff's Office and, therefore, officers were entitled to a retroactive salary increase under the 2014 CBA Extension.

Article XVI of the CBA between the County and PBA 49 sets forth a grievance procedure. A grievance is defined as

> any dispute between the Employer and the Employee with respect to the interpretation, application or violation of any of the provisions of this Agreement, or a dispute between the same parties concerning rules, regulations, or administrative decisions qualifying as terms and conditions of employment and which intimately and directly affect the work and welfare of the Employees.

The CBA goes on to provide for a three-step grievance process. First, the grievance is submitted to the Chief. Second, if not settled by the Chief, the grievance is submitted to the County Administrator. Finally, if the grievance remains unresolved, an arbitrator is appointed by the Public Employment Relations Commission (PERC). The arbitrator "shall have full power to hear the grievance and make a final decision, which decision shall

neither modify, add to, nor subtract from the terms of the [CBA] and the above referenced rules, regulations or administrative decisions." The arbitrator's decision is binding on the parties.

In response to the grievance filed by PBA 49 in February 2016, the Chief of the Sheriff's Office denied the grievance. The Chief contended that a merger had not occurred, rather, the County police had realigned with the Sheriff's Office. PBA 49 next submitted what it contended was a second-step grievance to the County's Director of Personnel.[1] Thereafter, in April 2016, PBA 49 submitted a request to PERC for appointment of an arbitrator to arbitrate the dispute.

The County responded by asking PERC to hold the arbitration in abeyance while it sought a declaratory judgment from a court. PERC denied that request, and the County and the Sheriff's Office filed a declaratory judgment action in the Law Division. In their complaint, the County and the Sheriff's Office sought a declaration that the County police had not been merged or consolidated into the Sheriff's Office and, therefore, the County police were not entitled to a retroactive salary increase. The County and the

---

[1] The County contends that the second-step grievance should have been submitted to the County Administrator. Nevertheless, both parties agree that the grievance was not resolved and a third-step grievance was submitted to PERC for the appointment of an arbitrator.

A-0485-16T2

Sheriff's Office also sought an injunction to prevent the arbitration from proceeding.

PBA 49 opposed the request for an injunction and filed a motion to dismiss the complaint so that the arbitration could proceed. The trial court heard arguments on the applications. On August 19, 2016, the trial court entered an order denying the request of the County and the Sheriff's Office for an injunction and dismissing their complaint for declaratory relief. The court also issued a written opinion explaining its rulings. In short, the trial court found that the County had agreed to arbitrate the question of whether the County police were entitled to a salary increase if there was a merger or consolidation of the County police with the Sheriff's Office.

The County and the Sheriff's Office filed a motion for reconsideration, but the trial court denied that motion in an order entered on September 20, 2016. The County and the Sheriff's Office then filed separate appeals from the orders entered on August 19, 2016 and September 20, 2016. We consolidated the appeals.

The County and the Sheriff's Office also sought a stay of the arbitration pending the appeals, which the trial court granted.

On appeal, the County and the Sheriff's Office make a series of arguments that are all designed to contend that a court, as opposed to an arbitrator, should decide whether the County police did or did not merge into the Sheriff's Office. Thus, plaintiffs argue the trial court erred by: (1) not making a declaratory judgment on that issue; (2) failing to consider an "admission" by counsel for PBA 49 that the County Police Department remained a "separate agency" after the reorganization; (3) failing to consider if the question whether a realignment occurred could be answered by the terms of the CBA; and (4) denying their motion for reconsideration.

While framed in different ways, only one issue is presented on these consolidated appeals: Did the County and PBA 49 agree to arbitrate the effect on salaries of the County Police if the County Police Department was merged or consolidated into the Sheriff's Office? We hold that they agreed to arbitrate and hence the underlying question is an issue for the arbitrator.

We begin our analysis with an overview of the well-settled law governing arbitration. We then review the language of the CBA. Finally, we address the specific arguments put forward by plaintiffs.

A.    The Law Governing Arbitration

Agreements to arbitrate are contracts and, therefore, subject to the law governing contract interpretation.  <u>Garfinkel v. Morristown Obstetrics & Gynecology Assocs.</u>, 168 <u>N.J.</u> 124, 134-35 (2001).  Accordingly, in interpreting the CBA here, we start with its plain language.  <u>See</u> <u>id.</u> at 135 (holding that the "intent expressed or apparent in the writing [] controls" the interpretation of an arbitration agreement).

Initially, the court needs to decide "whether the party seeking arbitration is making a claim which on its face is governed by the [CBA]."  <u>Standard Motor Freight, Inc. v. Int'l Bhd. of Teamsters</u>, 49 <u>N.J.</u> 83, 96 (1967) (citing <u>United Steelworkers of Am. v. Am. Mfg. Co.</u>, 363 <u>U.S.</u> 564, 567-68 (1960)).  In <u>Standard Motor</u>, our Supreme Court addressed the issue of arbitrability and identified two categories:  "substantive" arbitrability and "procedural" arbitrability.  <u>Standard Motor</u>, <u>supra</u>, 49 <u>N.J.</u> at 96-97.  "Substantive" arbitrability refers to "whether the particular grievance is within the scope of the arbitration clause [in the CBA] specifying what the parties have agreed to arbitrate."  <u>Id.</u> at 96.  Thus, the Court explained that

> a party cannot be required to submit to
> arbitration any dispute which he [or she] has
> not agreed so to submit . . . . [T]he judicial
> inquiry . . . must be strictly confined to the
> question whether the reluctant party did agree

> to arbitrate the grievance or did agree to
> give the arbitrator power to make the award
> he [or she] made.
>
> [Ibid.]

Thus, courts are limited to ascertaining whether the party seeking arbitration is making a claim that on its face is governed by the contract. If the answer is yes, then that question of contract interpretation is for the arbitrator. See Amalgamated Transit Union, supra, 200 N.J. at 114.

"Procedural" arbitrability asks "whether procedural conditions to arbitration have been met." Standard Motor Freight, supra, 49 N.J. at 97. "The grievance process itself is used to decide matters of procedural arbitrability and, so, arbitrators are the decision-makers for those concerns." Amalgamated Transit Union, supra, 200 N.J. at 116 (citing Standard Motor Freight, supra, 49 N.J. at 97).

Our Supreme Court has also explained that whether a question is substantively versus procedurally arbitrable is not always the relevant inquiry. Amalgamated Transit Union, supra, 200 N.J. at 117. Instead, the critical question is whether the issue being presented is a question to be decided by the arbitrator. Thus, if a question requires an interpretation of the CBA, and the CBA makes clear that such questions are for an arbitrator, then the

court's only role is to refer that question to arbitration. Id. at 118-19.

This appeal is governed by the decision in Amalgamated Transit Union. In Amalgamated, a probationary employee of New Jersey Transit and member of the union was terminated during his probation period for providing false information on his employment application. Amalgamated Transit Union, supra, 200 N.J. at 109-10. The union filed a grievance concerning the termination. It sought arbitration in accordance with the provisions in the CBA that permitted arbitration of any dispute or grievance "as to the interpretation, application, or operation of any provisions of this agreement[.]" Id. at 110. The arbitration panel concluded that the termination of a probationary employee was not subject to arbitration under the agreement. The trial court agreed, but the Appellate Division reversed. The Appellate Division determined that a court, not the arbitration panel, must decide whether the grievance was subject to arbitration. The Appellate Division then interpreted the agreement to permit arbitration of the grievance.

The Supreme Court reversed. The Court concluded that under the terms of the collective bargaining agreement, the arbitration panel, not the court, must decide whether a probationary employee

could invoke the arbitration provision and grieve his termination. Id. at 119-20. In reaching that conclusion, the Court explained:

> [T]he CBA clearly conferred that broadly stated power to interpret this CBA on the arbitrators. Thus, the CBA's arbitration provision granted to the arbitrators the authority to decide this question about their own jurisdiction. Any court looking at this CBA should have seen that it conferred broad interpretive power on the arbitrators and should have left the question for interpretation to the decision-makers designated by this CBA.
>
> [Id. at 118.]

B. The CBA between the County and PBA 49

The CBA between the County and PBA 49 broadly defines "grievance" as "any dispute between the [County] and the [PBA 49] with respect to the interpretation, application or violation of any of the provisions of this Agreement . . . ." Like the CBA in Amalgamated, the CBA here provides that disputes over the interpretation of the agreement are subject to arbitration. Consequently, the question whether the County police officers are entitled to different salaries because the County police was merged into the Sheriff's Office is a question for the arbitrator to decide.

The issue is not whether the County could reorganize its County Police Department. It could. Instead, the issue is if the County Police Department was reorganized with the Sheriff's

A-0485-16T2

Office, are the County police officers entitled to a retroactive pay raise? The 2014 CBA Extension states that if the reorganization is a merger or consolidation, then the County police officers receive a retroactive pay increase. If, on the other hand, the reorganization was not a merger or consolidation, then the County police officers do not receive a pay increase. That question requires an interpretation of the CBA, and thus is not for a court to decide. Instead, in the grievance procedure in the CBA, the parties agreed that an arbitrator would decide that question.

C. The Plaintiffs' Specific Arguments

When the narrow question before the court is properly framed, the arguments by plaintiffs can be summarily addressed.

First, plaintiffs are not entitled to a declaratory judgment by a court because they had previously agreed that an arbitrator would make that decision. The declaratory judgment action allows a court to determine any question of construction arising under, among other things, a contract. N.J.S.A. 2A:16-53; Carter v. Doe, __ N.J. __, __ (2017) (slip op. at 23) (citing Rego Indus., Inc. v. Am. Modern Metals Corp., 91 N.J. Super. 447, 453 (App. Div. 1966)). If, however, the contract calls for that determination to be made by an arbitrator, a party cannot sidestep the agreement to arbitrate that issue by filing a declaratory judgment action.

14

Second, plaintiffs' argument concerning an admission allegedly made by counsel for PBA 49 is a question for the arbitrator to consider. In other words, plaintiffs seek to have the court determine whether a merger took place. As we have already explained, the arbitrator will interpret the language in the 2014 CBA Extension to determine whether it triggers or does not trigger a salary increase. In so doing, the arbitrator will also be free to consider plaintiffs' arguments concerning an alleged admission made by PBA 49.

Third, the question of whether there was a realignment is not the relevant issue. The 2014 CBA Extension uses the phrase "merged/consolidated[.]" The arbitrator will interpret that phrase within the confines of deciding a salary issue.

Finally, since we have held that the trial court correctly denied the injunction of the arbitration and dismissed the declaratory judgment action, there was no error in denying the motion for reconsideration.

The County and PBA 49 also debate whether the question presented to the trial court was a question of law or fact. Here, that is not the controlling issue. Parties can agree to present questions of law to an arbitrator. Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 493 (1992) (granting arbitrators broad latitude in resolving questions of law when

interpreting contracts). Here, the CBA expressly stated that any interpretation of the CBA would be a question subject to the grievance procedures, with the ultimate step being binding arbitration. The only limitation to such an agreement in a public collective bargaining agreement would be questions of public policy and managerial prerogative. <u>City of Jersey City v. Jersey City Police Officers Benevolent Ass'n</u>, 154 <u>N.J.</u> 555, 571 (1998). Here, no party argued that there was a public policy reason against enforcing this arbitration provision, and no party argued that the disputed interpretation of the agreement involved managerial prerogative. Indeed, we discern neither a public policy problem nor a limitation on managerial prerogative.

Affirmed. The stay of the arbitration is vacated.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0485-16T2